LARRY W. GABRIEL, State Bar No. 68329
  lgabrielaw@outlook.com
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, CA 90049
Telephone: (818) 943-8992

Special Litigation Counsel for Plaintiff
Elissa D. Miller, Chapter 7 Trustee

EVAN C. BORGES, State Bar No. 128706
  EBorges@GGTrialLaw.com
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile:  (949) 383-2801

Attorneys for Defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| In re Girardi Keese,<br><br>Debtor,<br><br>――――――――――――――<br><br>ELISSA D. MILLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>Defendants. | Case No. 2:25-cv-01038-AH<br><br>**JOINT STATUS CONFERENCE AND RULE 26(f) REPORT**<br><br>Date:  June 4, 2025<br>Time:  1:00 p.m.<br>Place:  First Street Courthouse<br>  350 W. 1st Street<br>  Courtroom 7D, 7th Floor<br>  Los Angeles, CA 90012<br><br>Judge:  Hon. Anne Hwang<br><br>Complaint filed: 7/14/21<br>First Amended Complaint filed: 8/26/21<br>Answer to FAC filed: 11/11/21<br><br>Order Granting Transfer of Case to District Court for Trial and All Further Proceedings: 01/28/2025 |

In response to the Court's *Order Re: June 4, 2025 Status Conference* dated April 8, 2025 (the "**Status Conference Order**"), plaintiff Elissa D. Miller, chapter 7

trustee of bankruptcy debtor Girardi Keese ("**Plaintiff**") and defendants Erika N. Girardi ("**Erika**"), EJ Global, LLC ("**EJ Global**") and Pretty Mess, Inc. ("**PMI**," and collectively with Erika and EJ Global, "**Defendants**"), by and through their attorneys of record, hereby provide this *Joint Status Conference and Rule 26(f) Report* (the "**Joint Report**").  Plaintiff and Defendants are hereinafter referred to collectively as the "**Parties**."

## I. RESPONSES OF THE PARTIES TO THE COURT'S QUESTIONS IN THE STATUS CONFERENCE ORDER

The Parties provide the following responses to the Court's questions, which are repeated in bold italicized text below:

**1**.  *Which causes of action alleged in the First Amended Complaint allow for a jury trial?*

The Parties previously stipulated, in their joint pre-trial stipulation filed before the Bankruptcy Court on January 14, 2025, that:

(1) based upon the operative pleadings of the Parties – Plaintiff's *First Amended Complaint* filed on August 26, 2021 (the "**FAC**") and Defendants' *Answer to FAC and Demand for Jury Trial* filed on November 11, 2021 (the "**Answer and Jury Trial Demand**") – Defendants had timely demanded a jury trial in this Court, the District Court[1]; and

(2) "based on the FAC and the AFAC [the Answer and Jury Trial Demand], the Parties agree that, as a matter of law, withdrawal of the reference of this adversary proceeding is required and appropriate at this time."  *See* Joint Pre-Trial Stipulation [docket no. 147 in Bankruptcy Court adversary proceeding] at page 2, lines 5-13.

---

[1] Plaintiff's FAC is docket entry 12, and Defendants' Answer and Jury Trial Demand is docket entry 20, in the Bankruptcy Court adversary proceeding Pacer file.

In response to the Court's specific question, the FAC contains the following causes of action: (1) Declaratory Relief; (2) Turnover of Property of the Estate (11 U.S.C. § 542); (3) Avoidance and Recovery of Fraudulent Transfers; (4) Conversion; (5) Constructive Trust; (6) Account Stated; (7) Open Book; (8) Money Had and Received; (9) Unjust Enrichment; and (10) Accounting.

Defendants anticipate that as required by Local Rule 16 of this Court, in further meeting and conferring between counsel prior to the final pre-trial conference in this action, Plaintiff will clarify:

(a) on which of the above causes of action Plaintiff is proceeding at trial;

(b) of the three categories of transactions defined in the FAC – namely, "Lottery Payments" and "Luxury Items" (collectively the "Transfers") and the "Receivables" – which transactions will be the subject of relief sought by Plaintiff at trial; and

(c) as to the causes of action and transactions on which Plaintiff intends to proceed at trial, what relief, if any, is Plaintiff seeking other than a money judgment against Defendants?

Reserving all rights to expand on this response between now and the final pre-trial conference, as elaborated below, Plaintiff advises the Court that the gravamen of the FAC and the claims on which Plaintiff intends to proceed to trial are based upon the "Receivables" transactions as defined in the FAC, pursuant to which Plaintiff seeks a money judgment against Defendants due to a debt of in excess of $25 million that Plaintiff alleges is owed by EJ Global to Girardi Keese ("GK"), for which Plaintiff alleges Erika and PMI are liable under alter-ego theories.

The Parties agree that regardless of the cause of action, Plaintiff's request for a money judgment based upon the "Receivables" transactions is a legal claim on which Defendants are generally entitled to a jury trial. *See* Rutter Federal Practice Treatise at 16-3, ¶ 16:11 ("Generally, where plaintiff seeks money damages, there is a right to jury trial. On the other hand, where plaintiff seeks equitable relief (e.g.,

injunction), a jury trial is not required.").

The Parties, however, acknowledge that a division of authority exists as to whether alter-ego theories of liability are legal or equitable in nature and may be tried before a jury. *Id*. at 16-7, ¶ 16:12.4*o* ("Courts are split on whether the issue of piercing the corporate veil on an alter ego theory is to be determined by the court or jury."). Defendants further submit that even on equitable claims, issues may be submitted to the jury for certain factual findings.

Accordingly, the Parties reserve all rights and ask the Court not to make any determination until the final pre-trial conference regarding whether the claims going to trial related to the Receivables transactions or otherwise may or must be adjudicated by the Court and/or a jury.

Finally, understanding that at this time Plaintiff's principal theory of the case as described in this Joint Report relates to the Receivables transactions, the Parties provide the following response regarding whether a jury trial is allowed on each of the causes of action in the FAC:

**(1) Declaratory Relief.** "Declaratory relief may be legal or equitable in nature depending on the basic nature of the underlying issues." Rutter Group Federal Practice Treatise at 16-4, ¶ 16:12.4. Defendants note that in the FAC, the declaratory relief cause of action is limited to the so-called "Lottery Payments" and "Luxury Items" transactions as to which Plaintiff has reserved rights between now and the final pre-trial conference. *See* FAC at ¶¶ 30-31. Plaintiff has advised Defendant that Plaintiff is pursuing the declaratory relief cause of action on the "Luxury Items"; but that Plaintiff is not pursuing declaratory relief as to the "Lottery Payments."

**(2) Turnover of Property of the Estate (11 U.S.C. § 542).** The Parties do not agree on whether these claims are legal or equitable in nature, and reserve their positions between now and the final pre-trial conference.

**(3) Avoidance and Recovery of Fraudulent Transfers.** The Parties agree

that fraudulent conveyance claims are legal in nature.  Plaintiff reserves all rights between now and the final pre-trial conference to assert that these claims may be tried before the Court.

**(4) Conversion.**  The Parties agree that a conversion cause of action is legal in nature and may be tried before a jury.

**(5) Constructive Trust**.  Plaintiff contends that this cause of action is equitable in nature.  Defendant contends that constructive trust is not a cause of action, but a remedy.  The Parties reserve their positions between now and the final pre-trial conference.

**(6) Account Stated**.  The Parties agree that this "common count" claim under state law is legal in nature and may be tried before a jury.

**(7) Open Book**.  The Parties agree that this "common count" claim under state law is legal in nature and may be tried before a jury.

**(8) Money Had and Received**.  The Parties agree that this "common count" claim under state law is legal in nature and may be tried before a jury.

**(9) Unjust Enrichment**.  "The traditional remedy for unjust enrichment is restitution, which may be either a legal or equitable remedy depending on the basis of plaintiff's claim and the nature of the relief sought."  Rutter Federal Practice Treatise at 16-4, ¶ 16:12.2.  The Parties reserve all rights regarding the unjust enrichment cause of action.

**(10) Accounting**.  "An accounting is usually an equitable action and hence not jury triable.  However, right to a jury may exist in certain circumstances – 'i.e., where the accounting . . . is in essence a claim for repayment of a debt.'"  Rutter Group Federal Practice Treatise at 16-5, ¶ 16:12.4a [internal citations omitted].  The Parties reserve their positions between now and the final pre-trial conference.

**2**.  *Why should the non-jury trial claims not be referred back to the Bankruptcy Court?*

The Parties strongly agree that any splitting up of the claims in the FAC

between this Court and the Bankruptcy Court would be inefficient, impose undue burden on the Parties, likely lead to duplication of effort and additional burden on the federal courts as a whole, potentially lead to inconsistent adjudications, and would not be in the interest of justice. The Parties request that regardless of the division, if any, between jury and non-jury claims, the adjudication of the FAC take place before one tribunal, this Court.

**3**. *Are there any potential disputes or issues regarding waiver of the right to jury trial, particularly in light of the procedural posture and pendency of this adversary proceeding?*

The Parties agree that the answer to this question is "no." Defendants requested a jury trial in their Answer and Jury Demand in response to the FAC. No response (which would have included a jury demand) was required to Plaintiff's original Complaint because Plaintiff unilaterally amended the original Complaint to file the FAC before a response was due to the original Complaint.

## II. JOINT RULE 26(f) REPORT OF THE PARTIES

### A. Preliminary Statement/Background

This is an action brought by Plaintiff in her capacity as the trustee (the "**Trustee**") of the bankruptcy estate of Girardi Keese ("**GK**" or "**Debtor**"), a law firm which was managed and operated by Thomas V. Girardi ("**Mr. Girardi**") against his estranged spouse, Erika Girardi,[2] and two business entities, EJ Global and PMI that are solely owned by Erika. By this action, the Trustee seeks to recover over $25 million paid by the Debtor between 2007 and 2020 for expenses of EJ Global and Erika's charges against her personal American Express credit card. All the payments at issue were accounted for on the Debtor's books and records as an

---

[2] It is undisputed that on November 3, 2020, Erika filed an action for divorce, separated from Mr. Girardi and has been separated from him since that time.

inter-company debt "due from" EJ Global, which the Trustee alleges is Erika's alter ego.

### B. Issues To Be Tried

The issues to be tried are framed by the Trustee's FAC and Defendants' Answer and Jury Demand, which are docket nos. 12 and 20, respectively, in the Bankruptcy Court adversary proceeding Pacer file.

#### 1. Plaintiff's Position:

Erika, individually, used an American Express card that was issued under Mr. Girardi's personal American Express credit card account to pay for the expenses she incurred in pursuit for her entertainment career. In addition, the Debtor paid all of Defendants' billings/invoices incurred by Defendants for services obtained or products purchased by Erika in the pursuit of her entertainer/actor/singer/writer career. The American Express charges and invoices incurred by Erika were paid for by the Debtor and were recorded on the Debtor's books and records as advances (loans). The amount advanced is $25,592,26.26, not including interest. The Trustee further contends that the two corporate defendants were and are mere shells and the alter-ego of Erika, and therefore Erika is personally obligated for all obligations owed by the two corporate defendants to the Debtor. The Trustee also contends that Erika knowingly and willingly participated in Mr. Girardi's criminal enterprise and the money used to pay her business expenses were monies from that criminal enterprise. Finally, the Trustee contends that the Bankruptcy Court's findings of fact and conclusions of law approving the Trustee's Turnover Motion in the Bankruptcy Court [Dkt. 28 in Bankruptcy Court adversary proceeding], as reflected in the Bankruptcy Court's Order [Dkt. 137 in Bankruptcy Court adversary proceeding], is *res judicata*/law of the case.

#### 2. Defendants' Position:

Defendants contend that the Debtor's above-referenced payments at issue, by express design of GK, were booked and accounted for solely as an alleged debt of

EJ Global to GK, not an individual liability or debt of Erika to GK.  GK was comprised of attorneys who fully understood the difference between a debt owing by a limited liability company, as opposed to an individual debt owed by an interest holder in a limited liability company, such as Erika.  No promissory note exists to memorialize the alleged debt owing to GK by EJ Global, and GK was fully capable of preparing such a written memorialization of EJ Global's alleged debt obligation but never did so.  Further, no promissory note, writing, or other evidence exists that Erika at any time agreed to undertake any personal liability or debt to GK, based upon the transactions that gave rise to the alleged receivable booked by GK as owing to it by **only** EJ Global.  Accordingly, Erika has no individual liability and no evidence exists that she ever undertook or agreed to such an individual liability.  Rather, the only evidence is that sophisticated attorneys of GK structured, accounted for, and characterized the alleged debt at issue as one owing only by a limited liability company, EJ Global.

The Trustee's above-referenced accusations that Erika knowingly and willingly participated in a criminal enterprise are false, not supported by any evidence whatsoever, malicious, and should be stricken.  Not even the federal prosecutors in Mr. Girardi's recent criminal trial (where neither side called Erika as a witness) alleged that Erika did anything wrong at any time, including in connection with GK's payments of EJ Global's expenses.  This payment structure was put in place **solely** by Mr. Girardi, GK, and outside accountants retained by them.  Erika never agreed to take on the massive individual debt that the Trustee, standing in GK's shores, seeks to impose upon Erika, to which she never agreed and which GK never sought to impose upon her.  Erika's only mistake was trusting her then-husband, an ostensibly successful and sophisticated attorney.  Disturbingly, the Trustee's accusations are nowhere to be found in the Trustee's operative pleading, the FAC; and the Trustee and her counsel are fully aware that the allegations are wholly irrelevant to any claim or defense in this adversary proceeding.  Nonetheless,

and despite the demand by counsel for Erika that the above specious allegations be removed, the Trustee and her counsel have insisted on including in this Joint Report defamatory statements with no basis in fact. Erika can only deduce that the Trustee is retaliating against her for having questioned and challenged prior actions of the Trustee in the bankruptcy case.

### C.     Areas of Discovery

All non-expert discovery has been completed. As noted below, the Parties have agreed to designate expert witnesses 60 days prior to the trial date set by the District Court and to complete expert discovery within 20 days of trial.

### D.     Trial Estimate

Plaintiff has agreed that Defendants are entitled to a jury trial in this Court, but Plaintiff does not request a jury trial. Assuming a jury trial, Plaintiff estimates a 5 day jury trial. Defendants have demanded a jury trial in this Court. Defendants estimate a 10-day jury trial.

### E.     Expert Witnesses

The Parties agree to designate expert witnesses 60 days prior to trial and to complete discovery within 20 days of trial.

### F.     Settlement Discussions.

The Parties previously participated in settlement discussions between counsel but no agreement was reached. For confidential reasons, at this time, Defendants do not believe that assignment to a mediator would be productive.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

| | | |
|---|---|---|
| 1 | DATED: May 14, 2025 | JENKINS MULLIGAN & GABRIEL LLC |
| 2 | | |
| 3 | | |
| 4 | | By: _____ |
| 5 | | Larry W. Gabriel |
| 6 | | Special Litigation Counsel for Plaintiff Elissa D. Miller, Chapter 7 Trustee, Estate of Girardi Keese |
| 7 | | |
| 8 | DATED: May 14, 2025 | GREENBERG GROSS LLP |
| 9 | | |
| 10 | | |
| 11 | | By: _____ |
| 12 | | Evan C. Borges |
| 13 | | Attorneys for Defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc. |

# PROOF OF SERVICE

**Miller v. Girardi**
**C.D. Cal. Case No. 2:25-cv-01038-AH**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626.

On May 14, 2025, I served true copies of the following document(s) described as **JOINT STATUS CONFERENCE AND RULE 26(F) REPORT** on the interested parties in this action as follows:

Larry W. Gabriel
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, CA 90049
Tel:        (818) 943-8992
Email:    *lgabrielaw@outlook.com*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 14, 2025, at Costa Mesa, California.

_____
Cheryl Winsten