EVAN C. BORGES, State Bar No. 128706
  *EBorges@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone:   (949) 383-2800
Facsimile:   (949) 383-2801

Attorneys for Defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re Girardi Keese, <br><br>     Debtor, <br><br>———————————————<br><br> ELISSA D. MILLER, Chapter 7 Trustee, <br><br>     Plaintiff, <br><br> v. <br><br> ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation, <br><br>     Defendants. | Case No. 2:25-cv-01038-AH <br><br> **DEFENDANTS' MOTION IN LIMINE NO. 3** <br><br> **AMENDED NOTICE OF MOTION AND MOTION IN LIMINE RE:** <br><br> **ALLEGED EXPERT OPINIONS AND REPORTS OF PLAINTIFFS' THREE DESIGNATED EXPERTS: NICHOLAS TROSZAK; THOMAS P. JEREMIASSEN; AND JOHN J. MENCHACA** <br><br> Action Filed:  April 19, 2022 <br> Trial:         February 17, 2026 <br> Time:        8:30 a.m. <br> **Final Pre-Trial Conference [L.R. 16]** <br> Date:     January 28, 2026 <br> Time:     1:30 p.m. <br> **Judge:  Hon. Anne Hwang** <br> Place:   Courtroom 9C, 9th Floor <br> United States District Court <br> 350 W. 1st Street, Los Angeles, CA 90012 |

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on Wednesday, January 28, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9C of the United States Courthouse, located at 350 1st Street, Los Angeles, California 90012, the Honorable Anne Hwang, District Court Judge presiding, defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc. (collectively, "**Defendants**") will and hereby do move for

an order *in limine* precluding evidence and argument on the following issues:

The alleged expert opinions and written reports of three experts designated by plaintiff Elissa D. Miller ("**Plaintiff**") in *Plaintiff Elissa D. Miller's Expert Disclosure Report* filed on October 1, 2025 (Doc. # 20), including the alleged expert opinions and reports of Nicholas Troszak (the "**Troszak Report**"), Thomas P. Jeremiassen (the "**Jeremiassen Report**") and John J. Menchaca (the "**Menchaca Report**") (collectively "**Plaintiff's Experts' Opinions and Reports**"), attached hereto (without exhibits) as **Exhibits 1**, **2,** and **3**.

Defendants bring this amended motion in response to the Court's Order of January 6, 2025 (Doc. # 47), following the conference of counsel via telephone pursuant to Local Rule 7-3, which was held on January 7, 2026.

Pursuant to Rules 702 and 703 of the Federal Rules of Evidence, Plaintiff, as the proponent of Plaintiff's Experts' Opinions and Reports, bears the burden to establish their admissibility at a hearing outside the presence of the jury. Defendants request that the Court hold such a hearing and make findings consistent with the Court's "gatekeeper" function under applicable law.

This amended motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file, and any further argument or evidence that may be presented and accepted by the Court prior to or at the hearing and the Court's decision on this motion.

DATED:  January 12, 2026        GREENBERG GROSS LLP

By: _____
Evan C. Borges
Attorneys for Defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Erika Girardi ("**Erika**"), EJ Global, LLC ("**EJ Global**"), and Pretty Mess, Inc. ("**PMI**," and collectively along with Erika and EJ Global, "**Defendants**")

submit this Memorandum in support of their Motion *in Limine* No. 3.

## I.      THE PARTIES' CLAIMS AND DEFENSES.

Plaintiff filed this action in her capacity as bankruptcy trustee of Girardi Keese ("**GK**" or the "**Debtor**"), a law firm managed and operated by Thomas Girardi ("**TG**"), against his estranged spouse, Erika,[1] and two business entities owned by her. The Trustee seeks a judgment of $25,592,26.26, based upon payments (the "**Transfers**") the Debtor allegedly made over a 12-year period (between 2008 and 2020) for (i) expenses of EJ Global, and (ii) charges on an American Express card issued in Erika's name under an account where the party responsible for payment was TG and/or GK.  The Debtor accounted for the Transfers in its books and records as intercompany debt "due from" EJ Global to GK, which the Trustee alleges is Erika's alter-ego.  The payments by GK that comprise the Transfers were made to ***third parties***, meaning creditors or vendors that submitted invoices to EJ Global or American Express.  **None of the payments comprising the Transfers was made to EJ Global or to Erika**.

## II.     PLAINTIFF'S EXPERTS' REPORTS AND THIS MOTION IN LIMINE.

On July 31, 2025, this Court entered its Scheduling Order (Doc. # 14) providing for, *inter alia*:  (1) a deadline of October 1, 2025 for expert disclosures; and (2) a deadline for the "first round" of trial filings including motions *in limine* of December 23, 2025.  Scheduling Order (Doc. # 14) at 3-4.  By subsequent Stipulation filed December 24, 2025 (Doc. # 26) and approved by the Court's Order dated December 31, 2025 (Doc. # 38), the parties extended certain applicable dates.

In December, while the parties were preparing their first round trial filings including the Joint Witness List, Defendants, through counsel, advised Plaintiff that while Plaintiff on October 1, 2025 had designated three experts, Plaintiff had not provided a written report for one of the experts, Nicholas Troszak.  Plaintiff advised

---

[1] It is undisputed that on November 3, 2020, Erika filed an action for divorce, separated from Mr. Girardi, and has been separated from him since that time.

that the Troszak Report had been inadvertently omitted from the October 1 disclosures.  Defendants agreed that if Plaintiff would provide and confirm the documents comprising the Troszak Report by January 2, 2026, Defendants would waive any timeliness objection to disclosure of the Troszak Report.  Plaintiff identified the documents comprising the Troszak Report for Defendants on January 2, 2026; and Defendants confirmed their waiver of any timeliness objection.  This motion *in limine* followed the next business day, January 5, 2026.

## III.    APPLICABLE LEGAL STANDARDS

Rules 702 and 703 of the Federal Rules of Evidence ("**FRE**") govern the admissibility of Plaintiff's Experts' Opinions and Reports.  Rule 702 sets forth the requirements for admissibility of expert opinion testimony or reports as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise **if the proponent demonstrates to the court that it is more likely than not that**:
>
> (a) **the expert's** scientific, technical, or other **specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in dispute**;
>
> (b) **the testimony is based on sufficient facts or data**;
>
> (c) **the testimony is the product of reliable principles and methods**; and
>
> (d) **the expert's opinion reflects a reliable application of the principles and methods to the facts of the case**.

FRE 702 (emphasis added).

Rule 703, in turn, explains the type of information or documents upon which an expert may rely as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  **But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect**.

FRE 703 (emphasis added).

## IV. THE TRUSTEE BEARS THE BURDEN TO ESTABLISH "INSOLVENCY" OF GK DURING THE TIME PERIOD OF THE "TRANSFERS" (I.E., BETWEEN 2008 AND 2020); YET, THE TRUSTEE HAS NOT PROVIDED *ANY* EXPERT OPINION OR REPORT ON INSOLVENCY OF GK AS OF *ANY* TIME PERIOD.

In the FAC, the Trustee brings four claims for fraudulent transfers:

**Actual Fraudulent Transfer**.  One claim, the Fourth Claim, is for "**actual**" fraudulent transfers, meaning transfers engaged in with "actual intent to hinder, delay or defraud creditors."  The Fourth Claim is brought under § 548(a)(1)(A) of the Bankruptcy Code and its counterpart in the California Uniform Voidable Transfers Act (UVTA), § 3439.04(a)(1) of the California Civil Code.  FAC at ¶ 40.

Unlike claims for "constructive" fraudulent transfers, a trustee bringing a claim for "actual" fraudulent transfer does not need to prove, as a required element of the claim, the insolvency or financial distress of the debtor at the time of the transfer.  Under the UVTA, however, the court in determining "actual intent to hinder, delay, or defraud" may consider whether the transaction bears one or more of 11 identified "badges of fraud" (the presence or absence of which is not conclusive), including "[w]hether the debtor was insolvent or became insolvent shortly before or shortly after the transfer was made or the obligation incurred."  Cal. Civ. Code § 3439.04(b)(9).  Thus, solvency or insolvency of GK at the time of the Transfers is relevant to the Fourth Claim.

**Constructive Fraudulent Transfer**.  Under federal and state law, a trustee bringing a claim for constructive fraudulent transfer bears the burden of establishing two key elements:  (1) the debtor made the transfer without receiving reasonably equivalent value in return; and (2) the debtor was "insolvent" at the time of the transfer.  The Trustee brings constructive fraudulent transfer claims in the Fifth, Sixth, and Seventh Claims of the FAC.  For these claims, the Trustee bears the burden to prove by a preponderance of the evidence, as a required element of each claim, that at the time of the Transfers, GK was:

(i) insolvent under the definition of fair value of the debtor's liabilities

exceeding fair value of the debtor's assets ("**Balance Sheet Test**") [*see* Bankruptcy Code § 548(a)(1)(B)(ii)(I) and Civil Code § 3439.05(a), and definitions of "insolvent" in Bankruptcy Code § 101(32) and Civil Code § 3439.02(a)];

(ii) insolvent under the definition of operating with unreasonably small capital ("**Unreasonably Small Capital Test**") [*see* Bankruptcy Code §548(a)(1)(B)(ii)(II) and Civil Code § 3439.04(a)(2)(A)]; or

(iii) insolvent under the definition of not able to pay debts as debts come due ("**Inability to Pay Debts When Due Tes**t") [*see* Bankruptcy Code § 548(a)(1)(B)((ii)(III) and Civil Code §§ 3439.02(b) and 3439.04(a)(2)(B)].

**Norm in Fraudulent Transfer Litigation for Trustee to Offer Expert Opinion and Report on Debtor's Insolvency**.  In fraudulent transfer litigation, given that the debtor's insolvency at the time of a challenged transfer is a required element of a bankruptcy trustee's constructive fraudulent transfer claim, the norm is for the trustee to present in her case in chief an expert witness opinion and report attesting to the debtor's insolvency as of the date of the challenged transfer(s) under one or more of:  the Balance Sheet Test; the Unreasonably Small Capital Test; or the Inability to Pay Debts When Due Test.  *See Brandt v. Samuel, Son & Co., Ltd. (In re Longview Aluminum, LLC)* case no. 03 B. 12184, 2005 Bankr. LEXIS 1312, at \*17 (Bankr. N.D. Ill. July 14, 2005)("**It is generally accepted that whenever possible, a determination of insolvency should be based on seasonable appraisals or expert testimony**") (emphasis added).

Yet in this case, the Trustee, notwithstanding having retained one of the largest financial advisor firms in the world (which specializes in providing insolvency opinions in fraudulent transfer litigation), *__has NOT provided an expert opinion or report attesting to the Debtor's insolvency as of any time under any of the applicable insolvency tests.__*

**V.     THE TROSZAK REPORT.**

In the *Joint Witness List* (Doc. # 27), Plaintiff summarizes the anticipated

testimony of Mr. Troszak as follows:  "**GK trustee designated expert on *commingling of trust funds, and insolvency*.**"  *Id*. at 4 (emphasis added).  The Troszak Report is not relevant, does not meet the requirements for an expert opinion, and should be excluded for the following reasons:

*First*, the Troszak Report consists of two prior Declarations given by Mr. Troszak in support of the Trustee's position in prior motion practice before the Bankruptcy Court that ***had nothing to do with proving GK's insolvency as of any point in time under any of the three relevant insolvency tests***.  The Troszak Report provides data points related to GK "commingling" of its trust accounts ("comingling" defined as GK – over a period of 22 years between 1998 and 2020, to different degrees in varying amounts, in transactions that Mr. Troszak had no ability to verify for the period prior to 2013 – depositing into and withdrawing from client trust accounts funds belonging to clients, funds belonging to GK, funds belonging to TG, and funds possibly belonging to third parties).  The Troszak Report thus supported two motions by the Trustee before the Bankruptcy Court where the Trustee was arguing that – as of two different points in time, one the December 2020 bankruptcy filing, and the other the date of a transfer in 2007:  (1) the GK client trust accounts were comingled and included client, GK, TG, and other funds; and (2) as a result of the comingling, ownership of the trust funds could **not** be established by "tracing" analysis.  **That's all that was at issue – comingling of GK trust accounts and ability to trace ownership of funds as of two specific points in time**.  But those issues, and therefore the Troszak Report supporting the Trustee's position on them in prior motions, have nothing to do with the issues currently before this Court.  None of the analysis in the Troszak Report, which focuses on comingling of GK client trust accounts, tells the Court or jury anything about the alleged insolvency of GK during the 2008 through 2020 time period of the Transfers under any legally relevant "insolvency" test (i.e., the Balance Sheet Test, the Unreasonably Small Capital Test, or the Inability to Pay Debts as Due Test).

*Second*, no matter how many times the Trustee describes the Troszak Report as providing an expert opinion and report on "insolvency," the Troszak Report:

**(1) does not provide any expert opinion or report of the alleged insolvency of GK as of any point in time;**

**(2) does not contain the word "insolvency"; and**

**(3) does not mention or undertake any analysis, including as required by Rules 702 and 703, of any of the three ways under applicable law of establishing insolvency (the Balance Sheet Test, the Unreasonably Small Capital Test, or the Inability to Pay Debts as Due Test).**

Instead of proof of insolvency where it is a required element of three out of four of the Trustee's fraudulent transfer claims, the Trustee has thrown onto the wall what she can, which is not a substitute for proof of a required element of causes of action. The Troszak Report must be excluded.

## VI. THE JEREMIASSEN REPORT.

Plaintiff summarizes the anticipated testimony of Mr. Jeremiassen as follows: "**GK trustee designated expert on *the accounting of the Transfers made by Girardi Keese to the Defendants.***" Joint Witness List at 4 (emphasis added).

The Jeremiassen Report is nothing more than the Trustee trying to use an "expert" to read and tell the jury what is contained in the hearsay records of GK, while at the same time disclaiming the veracity of the records of GK. Jeremiassen in his report disclaims that he or his firm have performed any audit in accordance with Generally Accepted Auditing Standards; he states "nor have we performed a review or compilation of financial statements in accordance with the standards promulgated by the American Institute of Certified Public Accountants[.]"; and he concludes that "I make no representation nor do I express any opinion regarding the accuracy or reasonableness of said information [meaning financial information about GK]." (Jeremiassen Report, ¶ 9 at page 475 of 511, Doc. # 20).

Already, the Trustee has accused GK of being a criminal enterprise with

records in disarray and chaos upon assuming her duties. The Trustee also advocates putting evidence before the jury of TG being criminally indicted and convicted for millions of dollars in fraud on certain clients and embezzlement of those clients' funds over a period of years shorter than the 12 years of transactions of the alleged Transfers. The Trustee also advocates putting evidence before the jury of the criminal conviction of the chief financial officer of GK, Christopher Kamon, who stole millions of dollars from GK and assisted TG in other fraud, and who all the while was the person responsible for maintaining GK's books and records, including those that the Jeremiassen Report accepts at face value.

In the Menchaca Report, Mr. Mechaca argues that with respect to the Transfers, GK and its accounting department (not Erika, because it is undisputed she had no involvement whatsoever) committed tax fraud in their description and classification of the Transfers for tax purposes. These allegations of the Trustee and her expert do not exist in the mind of Mr. Jeremiassen for his report, in which he states "on information and belief" that the records of GK that he is being paid to read to the jury were maintained in the ordinary course of business and qualify for the business records exception to the hearsay rule – meaning he accepts them as accurate purely on faith. Based upon the Trustee's allegations against TG, GK, and Kamon, there could not be a more suspect set of records than those of GK. But when it comes to hanging Erika with a $25 million liability allegedly supported by those records over 12 years, the Trustee and Mr. Jeremiassen look the other way. There is nothing "expert" about the Jeremiassen Report, which should be excluded.

## VII.   THE MENCHACA REPORT.

Plaintiff summarizes the anticipated testimony of Mr. Menchaca as: "**GK trustee designated expert _Tax Fraud issues_.**" *Id*. at 4 (emphasis added). The Menchaca Report abandons and disavows the entire debt or "Receivables" theory of the case set forth in the FAC. The Menchaca Report asserts that no valid debt obligation was created related to the Transfers. But this expressly contradicts the

Trustee's claim in the FAC that the transactions comprising the alleged Transfers or "Receivables" "were meticulously added to the Debtor's books as a valid and enforceable open book account and account stated and receivable."  FAC, ¶ 20.

The Menchaca Report blames **only** GK and TG for the alleged tax fraud that Mr. Menchaca says was enabled by the characterization of the Transfers as debt.  The Trustee stands in the shoes of GK, under the doctrine of *in pari delicto*, and should not and cannot profit from GK's alleged fraud.  The Menchaca Report concludes that the penalty should be Erika bearing additional tax liability based upon what Mr. Menchaca says should have been classified as income over 12 years.  Thus, the Trustee now contends that GK committed a fraud in structuring the transactions that led to the Transfers; and that Erika should be penalized with added tax liabilities (which the FTB already has imposed on Erika).  The Trustee, by seeking her own additional $25 million judgment against Erika based on the same transactions, thus requests a double penalty against Erika for transactions that the Trustee admits were the idea of and implemented by GK.  The Menchaca Report also contains false assumptions, including that Erika had personal responsibility for the EJ Global or American Express debt paid with the Transfers.  In sum, the Menchaca Report only confuses the issues in this action, does not satisfy Rules 702 and 703, and reveals that the Trustee by doing and saying anything that the Trustee thinks will hurt Erika, has hurt her own case.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court grant this Motion *in Limine* No. 3.

DATED:  January 12, 2026                    GREENBERG GROSS LLP

By: _____
Evan C. Borges
Attorneys for Defendants Erika Girardi, EJ Global, LLC, and Pretty Mess, Inc.

**PROOF OF SERVICE**
**Miller v. Girardi**
**C.D. Cal. Case No. 2:25-cv-01038-AH**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626.

On January 12, 2026, I served true copies of the following document(s) described as **DEFENDANTS' MOTION IN LIMINE NO. 3; PROPOSED ORDER** on the interested parties in this action as follows:

Larry W. Gabriel
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, CA 90049
Tel:        (818) 943-8992
Email:    *lgabrielaw@outlook.com*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2026, at Costa Mesa, California.

_____
Cheryl Winsten

-11-                                           Case No. 2:25-cv-01038-AH
DEFENDANTS' MOTION IN LIMINE NO. 3