LARRY W. GABRIEL, State Bar No. 68329
*lgabrielaw@outlook.com*
JENKINS MULLIGAN & GABRIEL LLP
5743 Corsa Avenue, Suite 110
Westlake Village, California 91361
Telephone: (818) 943-8992

Special Litigation Counsel for Plaintiff
Elissa D. Miller, chapter 7 Trustee

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| In re Girardi Keese,<br><br>  Debtor,<br>_____<br><br>ELISSA D. MILLER, Chapter 7 Trustee,<br><br>  Plaintiff,<br><br>  v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>  Defendants. | Case No. 2:25-cv-01038-AH<br><br>**STATUS REPORT RE PLAINTIFF, ELISSA D. MILLER, CHAPTER 7 TRUSTEE, ESTATE OF GIRARDI KEESE PROPOSED SALE OF THE LITIGATION CLAIMS IN THIS CASE TO THIRD PARTY.**<br><br>**Final Pre-Trial Conference [L.R. 16]**<br>Date:  April 29, 2026<br>Time:  1:30 p.m.<br>**Trial**<br>Date:  May 19, 2026<br>Time:  8:30 a.m.<br>**Judge:** Hon. Anne Hwang<br><br>**Place:**  Courtroom 9C, 9th Floor<br>  United States District Court<br>  350 W. 1st Street<br>  Los Angeles, CA 90012 |

**TO THE HONORABLE  ANNE HWANG, JUDGE PRESIDING, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

1

STATUS REPORT RE PLAINTIFF, ELISSA D. MILLER, CHAPTER 7 TRUSTEE, ESTATE OF GIRARDI KEESE PROPOSED SALE OF THE LITIGATION CLAIMS IN THIS CASE TO THIRD PARTY.

**JENKINS MULLIGAN & GARBIEL LLP**

Plaintiff, Elissa D. Miller, Chapter 7 Trustee ("**Trustee**") for the estate of Debtor Girardi Keese ("**Debtor**"), submits this Status Report to advise this Court regarding's the Trustee's recent "*Motion To Approve Sale Of Estate's Claims Against Erika Girardi, Pretty Mess, Inc., And EJ Global, LLC Pursuant To 11 U.S.C. § 363(B) To LHA Land LLC Or The Highest Bidder*" **(the "Sale Motion")** pursuant to which the Trustee seeks to sell the claims against the Defendants as presented in this litigation, (the "**Litigation Claims**") to a third party for $2 million or to the highest bidder (the "**Sale Agreement**"). The Sale Agreement was reached after the Trustee and Defendants engaged in extensive settlement discussions over the past sixty (60) days, which ultimately did not result in a resolution. Following the impasse, the Trustee received an offer to purchase the claims from a third-party purchaser willing to acquire the litigation claim for the agreed-upon $2 million purchase price.

The Trustee filed the Sale Motion in the Bankruptcy Court in Case No. 2:20-bk-21022-BR on April 15, 2026 [ECF Docket No. 2761] A true and correct copy of the Sale Motion is attached hereto as Exhibit 1.  The Trustee also sought and was granted an Order Shortening Time for the Hearing on Sale Motion so that the hearing on approval of the Sale Motion is scheduled for April 23, 2026 10:00 a.m. Pursuant to the Sale Agreement, the Buyer must pay the purchase price immediately after entry of the Order approving the sale and the sale will close upon receipt of that payment.

As set forth in the Sale Motion, the Trustee believes the Sale is in the best interests of the Estate and its creditors and by seeking overbids, she is confirming that the price will be fair market value.

Additionally, the $2 million purchase price will provide a substantial and immediate benefit to the Estate, enhancing the pool of assets available to satisfy creditor claims and enabling the Trustee to expedite administration of the Estate eliminating one impediment to the closing the case as soon as is possible. Sale Motion, Declaration of Elissa D. Miller, ¶¶

STATUS REPORT RE PLAINTIFF, ELISSA D. MILLER, CHAPTER 7 TRUSTEE, ESTATE OF GIRARDI KEESE
PROPOSED SALE OF THE LITIGATION CLAIMS IN THIS CASE TO THIRD PARTY.

12-13.

The purchaser has been advised that this Court previously designated the May 19, 2026 as the trial date and of this Court's Order entered February 4, 2026 Granting Stipulation re Final Modification of Civil Pretrial Schedule and Trial Order to Extend Deadlines by Thirty-Five Days [Dkt. No. 71].

Respectfully submitted,

Dated:  April 15, 2026

JENKINS MULLIGAN & GABRIEL, LLP

By:_____

Larry W. Gabriel

Special Litigation Counsel for Plaintiff, Elissa D. Miller, Chapter 7 Trustee, Estate of Girardi Keese

3

# <u>EXHIBIT 1</u>

**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy, State Bar No. 207959
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Attorneys for
Elissa D. Miller, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | **MOTION TO APPROVE SALE OF ESTATE'S CLAIMS AGAINST ERIKA GIRARDI, PRETTY MESS, INC., AND EJ GLOBAL, LLC PURSUANT TO 11 U.S.C. § 363(B) TO LHA LAND LLC OR THE HIGHEST BIDDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF** |
| | **[Application For Order Shortening Time For Hearing Filed Concurrently Herewith]** |
| | Hearing Information: <br> DATE: TBD <br> TIME: TBD <br> Ctrm: 1668, 255 E. Temple St., Los Angeles, CA 90012 |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER**

**PARTIES IN INTEREST:**

1

MOTION

Elissa D. Miller, the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Girardi Keese (the "Debtor"), seeks approval to sell the Estate's claims against Erika Girardi, Pretty Mess, Inc., and EJ Global, LLC, to LHA Land, LLC, for $2 million cash, subject to overbids.  In support of the Motion, the Trustee submits the following memorandum of points and authorities and the declaration of Elissa D. Miller in support thereof, and respectfully represents as follows:

## I.      BASIS FOR EXPEDITED RELIEF

As an initial matter, the Trustee is seeking authority to sell these claims on an expedited basis because a jury trial is scheduled for May 19, 2026, and a pretrial conference is scheduled for April 29, 2026, both in the U.S. District Court, Central District of California (the "District Court") and the District Judge has ordered that no further continuances of the trial be requested.[1]  If the sale is approved, the identity of the plaintiff will change, as will the composition of the plaintiff's legal team.  To avoid prejudicing any buyer, the Trustee seeks an order approving the sale on an expedited basis so that an order can be entered in sufficient time in advance of the trial date and, hopefully, the pre-trial conference date.

## II.      INTRODUCTION

The Trustee commenced litigation against Erika Girardi and two companies associated with her, Pretty Mess, Inc., and EJ Global, LLC (together, Erika Girardi and the two entities are referred to as the "Defendants"), in July 2021.  In January 2025 and because of the defendants' election not to consent to this Court's authority to enter a final judgment, the Court transferred the action to the U.S. District Court.  A jury trial is scheduled to commence on May 19, 2026.  While preparing for trial, the Trustee received an unsolicited offer from LHA Land LLC, a Colorado limited liability company, to purchase the Estate's claims against

---

[1] The Trustee is considering whether it would be appropriate to file an *ex parte* application with the District Court to request a continuance of these dates notwithstanding the order mandating no further requests but has not filed a request or determined as of the filing of this Motion is one would be appropriate.

MOTION

the Defendants for $2 million.  The Trustee has received a cash deposit of $200,000.  Because the Trustee believes that the offer is in the best interests of the Estate because it avoids any risk that the jury will find in favor of the Defendants, the delay that may result from any appeal, and the risk and delay associated with collection of any judgment that may be obtained the Trustee believes the sale is in the best interests of the estate and in her best business judgment. Accordingly, the Trustee seeks authority to sell the Estate's claims against the Defendants to LHA Land LLC, or to any qualified overbidder with a higher and better offer.

## III.   FACTUAL BACKGROUND

### A.   The Debtor's Bankruptcy Case

The Debtor was once a thriving law firm based in Los Angeles, California.  On December 18, 2020 (the "Petition Date"), petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 bankruptcy petition against the Debtor.[2]  A few days later, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Docket No. 12].  The Court entered an order granting the motion on January 5, 2021 [Docket No. 45].  On January 6, 2021, the Trustee was appointed as the interim trustee [Docket No. 50].

On January 13, 2021, the Court directed the Clerk of Court to enter an order for relief and the Trustee was appointed and accepted her appointment in the Debtor's case [Docket No. 71].  After more than five years of administration, the end of the Debtor's case is in sight, although it will not be fully administered until all of the avoidance actions are resolved and all cases where the Debtor may be entitled to fees on a quantum meruit basis are resolved.  In the meantime, the Trustee anticipates seeking authority to make an interim distribution later this year.

---

[2]    The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas Girardi, which is currently pending as Bankruptcy Case No. 2:20-bk-21020-BR.

MOTION

In January 2023, Thomas Girardi was indicted on four counts of wire fraud related to the theft of client funds.  After a trial, the jury found him guilty on all four counts and he was sentenced to over seven years in federal prison.

**B.     The Claims Against the Defendants**

Erika Girardi married Tom Girardi in 2000.  In approximately 2007, Erika decided to pursue an entertainment career and formed EJ Global, LLC as her entertainment company. She was the sole member and also its managing member.  She also formed Pretty Mess, Inc., and is its sole shareholder.

In July 2021, the Trustee sued the Defendants for, *inter alia*, declaratory relief, turnover of property of the estate, avoidance and recovery of fraudulent transfers, conversion, constructive trust, and an accounting.  The complaint was amended shortly thereafter.  A copy of the first amended complaint is attached as Exhibit "1."  The complaint sought the recovery of no less than $25.59 million of funds paid by the Debtor for the benefit of the Defendants between 2008 and 2020.  Approximately $14 million of this was paid within ten years of the Debtor's bankruptcy filing.  The Trustee's claims against the Defendant are referred to in this Motion as the "Trustee's Claims" but do not include the Earring Proceeds, as defined below). The Defendants answered and raised a number of affirmative defenses, including that the claims were barred by the applicable statutes of limitation.  The Defendants requested a jury trial and did not consent to this Court's authority to enter a final order.  The complaint was filed by the Law Offices of Ronald Richards & Associates APC (the "Richards Firm"), as special counsel to the Trustee.  In December 2021, the Trustee terminated the Richards Firm's representation and retained Jenkins Mulligan & Gabriel, LLP (the "Gabriel Firm") as special counsel.  Pursuant to the approved terms of the Gabriel Firm's employment,[3] it was entitled to recover costs plus 40% of the net recovery after the complaint was filed through 60 days before trial and 45% of the net recovery thereafter.

---

[3] *See Chapter 7 Trustee's Amended Application to Employ Larry W. Gabriel, Gabriel, Jenkins & Mulligan and Gabriel, LLP in Place and Instead of the Law Offices of Ronald Richards, Ronald Richards & Associates, A.P.C., as Special Litigation Counsel* [Dkt. 864].

4

By order entered on October 23, 2024, a claim at issue in the complaint involving a pair of diamond earrings was resolved with the Bankruptcy Court finding that the proceeds from the sale of the earrings were property of the estate (the "Earring Proceeds"). The Trustee is holding the Earring Proceeds.

Since the Defendants appeared, the Trustee and the Defendants have actively litigated the Trustee's Claims and engaged in extensive discovery, including expert discovery. The Trustee has utilized Development Specialists, Inc. ("DSI") as her expert witnesses. DSI has also served as the Trustee's forensic accountants in this case.

Because of the Defendants' request for a jury trial and their non-consent to this Court's authority to enter a final order on the Trustee's Claims, the Court transferred the Adversary Proceeding to the U.S. District Court, Central District of California, where it is pending as case number 2:25-cv-01038-AH. The Defendants have requested extensions of various deadlines in the District Court's scheduling order, most recently obtaining a continuance of the jury trial from March 10, 2026, to May 19, 2026. The most recent order, a copy of which is attached as Exhibit "2," orders that no further continuances be requested. The Trustee has engaged in settlement discussions with the Defendants and has received extensive financial disclosures from the Defendants in the context of these discussions, with the disclosures subject to strict confidentiality provisions.

### C.   The Agreement to Purchase the Trustee's Claims

While preparing for trial, the Trustee received an unsolicited offer to purchase the Trustee's Claims for $2 million. For the reasons set forth below and in her declaration, the Trustee believes that this reflects fair value for the Trustee's Claims and she accepted the offer, subject to overbids. A copy of the Asset Purchase and Sale Agreement (the "Agreement") is attached as Exhibit "3" and summarized below:

Purchase Price:  $2,000,000, with a $200,000 deposit, which has been received.

Closing:  The Agreement requires a waiver of the 14-day stay set forth in Federal Rule of Bankruptcy Procedure ("FRBP") 6004 and the balance of the purchase price is due upon

MOTION

entry of the Court's order authorizing the Trustee to enter into the Agreement and the sale will close upon receipt of that payment.

Purchased Assets: The purchased assets ("Purchased Assets") are comprised of the Trustee's Claims, all documents obtained from parties through discovery in the litigation of the Trustee's Claims, and all other documents known to be in the Trustee's possession related to the Trustee's Claims. The Purchased Assets <u>do not include</u> documents or information provided to the Trustee subject to a confidentiality or nondisclosure agreement, including the financial documents produced by Erika Girardi pursuant to a nondisclosure agreement in the context of settlement discussions. The Purchased Assets also do not include the Earring Proceeds.

Experts: In connection with the Trustee's Claims, DSI prepared expert reports that were submitted to the District Court. The reports are subject to a motion *in limine*. To the extent the expert reports are admitted into evidence, the buyer shall have the right to use the expert reports and be entitled to examine DSI's experts at trial, subject to the Buyer entering into a contract for DSI's services. Neither the Trustee nor the Estate will be liable or responsible for payment to DSI for any services rendered to the buyer.

As-is, Where-Is Sale: The Purchased Assets will be sold "as is, where is" and with no representations or warranties of any kind other than the limited representations in the Agreement.

Pursuant to its employment application and because as of the effective date of the Agreement, trial is less than 60 days away, the Gabriel Firm will be entitled to 45% of the Purchase Price, or $900,000. It has agreed to waive costs. It is anticipated that the Gabriel Firm may be asked to represent the buyer to continue to prosecute the Trustee's Claims on the buyer's behalf and, if it does so, the Gabriel Firm will not utilize or share any information or evidence that are not part of the Purchased Assets In addition, if the buyer does utilize the services of the Gabriel Firm, the Gabriel Firm shall look only to the Buyer for any compensation in addition to the contingency fee being paid by the Estate.

6

MOTION

**D.** **Proposed Overbid Procedures**

The Agreement provides that the sale of the Purchased Assets is subject to overbid. In connection with the notice of the hearing on this Motion, the Trustee will notify bidders that any overbid should be presented to the Trustee by email at elissa.miller@gmlaw.com with a copy to her counsel Kandrassy@raineslaw.com by 5:00 p.m. Pacific time the last business day prior to the hearing on this Motion. Any overbid should be for at least $2,050,000 and be accompanied by an asset purchase agreement identical to the Agreement in other than the identification of the buyer and the purchase price, that is executed by the overbidder. In order for a bidder to be qualified to participate in the auction, the overbid must be accompanied by both (1) a deposit with the Trustee by wire or other immediately available proceeds of $205,000 (instructions will be provided by the Trustee upon request) and (2) satisfactory evidence of the buyer's financial wherewithal to timely close the sale. If an overbid is timely received, then the Trustee will conduct an auction at the hearing on the Motion with minimum bid increments of $25,000. To be clear, all overbids, deposits and financial information must be received by the Trustee at her office, Greenspoon Marder LLP, 1875 Century Park East, Suite 1900, Los Angeles, CA 90067 or by wire and email by no later than 5:00 p.m. Pacific time the last business day before the hearing on the Motion.

**IV.** **MEMORANDUM OF POINTS AND AUTHORITIES**

**A.** **The Sale Is a Proper Exercise of the Trustee's Business Judgment**

Section 363(b) empowers a debtor-in-possession to "use, sell or lease . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case. *See In re America West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). This requires examination of the "business justification" for the proposed sale. *See In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. BAP 1996);

7

MOTION

see also *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an "arms-length" transaction. *See Wilde Horse Enterprises*, 136 B.R. at 841; *see also 240 North Brand Partners*, 200 B.R. 653. A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion. *See In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988).

Here, and after careful consideration of the relevant factors, the Trustee believes that the sale of the Trustee's Claims for $2 million is in the best interests of the Estate. Although the complaint sought damages in excess of $25 million, the Defendants asserted the statute of limitations as a defense. Because the Internal Revenue Service is a creditor in the Debtor's case, the Trustee believes a ten-year reach-back period is appropriate, which would reduce the amount at issue to roughly $16 million. Although the Trustee is confident that she would prevail in her pursuit of the Trustee's Claims, any judgment would be likely to be appealed given Erika's past history of appealing orders in this case, and collection of the judgment would be speculative, especially given that Erika has substantial tax liabilities outstanding. The Trustee also considered that Erika is 55 years old and that her primary source of income is from her appearances on the television series "The Real Housewives of Beverly Hills." The continuation of her contract with the show's production company is uncertain, as is the duration of the show's future airing. The Trustee believes that any meaningful recovery would likely require years to achieve.

The Trustee has also evaluated the fact that this will be a jury trial and substantially increase the costs of trial and that juries are inherently unpredictable. This, together with the reality that a jury trial presents an increased risk of error with respect to evidentiary rulings, jury instructions, and the application of law to complex factual issues, weighs in favor of the

MOTION

sale.  In addition, Erika Girardi has demonstrated a history of litigating through the appellate process.  The appellate process could take two years or more and if a reversal of a judgment were obtained, a retrial would likely be required.  Entering into this agreement is one more step in the Trustee's efforts to resolve all pending matters so she can ultimately close the case.

The overbid procedure will provide any parties with an interest in acquiring the Trustee's Claims with an opportunity to do so and therefore ensure that the highest and best price is received under the circumstances.

B. **The Payment of the Contingency Fee and Costs to the Gabriel Firm Is Appropriate**

Pursuant to the employment application that was approved by the Court, the Gabriel Firm is entitled to 45% of the Estate's net recovery from the Trustee's Claims because it is within 60 days of the trial date.  The application provided that "net recovery" meant the amount remaining after the total amount received by settlement, arbitration award, or court judgment has been reduced by the sum of all costs.  The Gabriel Firm has agreed to waive costs.  The Gabriel Firm is responsible for any quantum meruit claim of the Richards Firm related to the Trustee's Claims.

Because the Trustee hopes to save the time and expense of separate applications and additional notices to creditors, the Trustee believes this "combined" sale /compensation motion is appropriate under 11 U.S.C. §§ 105(a), 328(a), and 330(a).  *See In re Olson*, 2006 WL 2433448 (Bankr. D. Idaho July 24, 2006) (court recognizes propriety of motions to approve compromises that also include requests for payment of court-approved contingency fees); *In re H.K. Porter Co., Inc.*, 183 B.R. 96 (Bankr. W.D. Pa. 1995) (in determining dispute over ownership of settlement proceeds, court referenced previously approved motion for authority to settle litigation and for authority to pay attorney a 50% contingency fee out of settlement proceeds).

9

MOTION

## V.     <u>WAIVER OF THE STAY IS APPROPRIATE</u>

Under FRBP 6004(h), an order authorizing the sale of property is stayed for 14 days after the entry of the order, unless the court orders otherwise. *See* Fed. R. Bank. P. 6004(h). The Advisory Committee Note states that the court may, in its discretion, order that the stay in inapplicable so that the sale or assumption may take place immediately upon entry of the order. *See* Fed. R. Bankr. P. 6004(g) Advisory Committee's Note.

Here, the waiver of the stay imposed by FRBP 6004(h) is appropriate. The pretrial conference is currently scheduled for April 29, 2026, and the trial is scheduled for May 19, 2026, at 8:30 a.m. and the buyer is going to need assurance that it is the real party in interest prior to then so that it can take action to intervene as the real party in interest. To do that, any order approving this Motion must be enforceable as far in advance of the trial as possible. Accordingly, the Trustee requests that the Court waive the stay imposed by Rule 6004(h).

## VI.     <u>CONCLUSION</u>

For these reasons, the Trustee respectfully requests that the Court enter an order providing for the following relief:

1.     Granting the Motion;

2.     Approving the overbid procedures set forth in the Motion;

3.     Authorizing the Trustee to enter into the Agreement and approving the terms of the Agreement, a copy of which is attached hereto as Exhibit "3," or, if an overbid is received, authorizing the Trustee to enter into a substantially similar agreement with the overbidder for the applicable purchase price and with the applicable buyer's name;

4.     Authorizing the Trustee to pay the Gabriel Firm $900,000, or 45% of any overbid that is accepted as the highest and best offer, with the payment to be made solely from the purchase price for the Trustee's Claims;

5.     Waiving the 14-day stay pursuant to Fed. R. Bankr. Proc. 6004(h);

6.     Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement; and

MOTION

7. Granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Dated: April 15, 2026

RAINES FELDMAN LITTRELL LLP

By: */s/ Kyra E. Andrassy*

Attorneys for Elissa D. Miller, Chapter 7 Trustee

MOTION

## DECLARATION OF ELISSA D. MILLER

I, Elissa D. Miller, declare as follows:

1.      I am an individual and a Chapter 7 Trustee for the bankruptcy estate ("Estate") of Girardi Keese (the "Debtor") in the above-entitled action.  I make this declaration in support of my motion to approve a sale of certain claims to LHA Land LLC (the "Motion").  All terms not defined in this declaration shall have the same meaning as in the Motion.  I have personal knowledge of the facts set forth herein, and if called upon to testify thereto, I could and would competently do so under oath.

2.      The Debtor was once a thriving law firm based in Los Angeles, California.  On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie filed an involuntary chapter 7 bankruptcy petition against the Debtor.   A few days later, the petitioning creditors filed a Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g).  The Court entered an order granting the motion on January 5, 2021.  On January 6, 2021, I was appointed as the interim trustee.

3.      On January 13, 2021, the Court directed the Clerk of Court to enter an order for relief and I was appointed and accepted my appointment in the Debtor's case.

4.      After more than five years of administration, the end of the Debtor's case is in sight, although it will not be fully administered until all of the avoidance actions are resolved and all cases where the Debtor may be entitled to fees on a quantum meruit basis are resolved. In the meantime, the Trustee anticipates seeking authority to make an interim distribution later this year.

5.      In January 2023, Thomas Girardi was indicted on four counts of wire fraud related to the theft of client funds.  After a trial, the jury found him guilty on all four counts and he was sentenced to over seven years in federal prison.

6.      I am informed that Erika Girardi was married to Tom Girardi in 2000.  I am further informed that (a) in approximately 2007, Erika decided to pursue an entertainment

MOTION

career and formed EJ Global, LLC as her entertainment company; (b) she was the sole member and also its managing member; and (c) she also formed Pretty Mess, Inc., and is its sole shareholder.

7. In July 2021 and while I was represented by the Richards Firm as special counsel, I sued the Defendants for, inter alia, declaratory relief, turnover of property of the estate, avoidance and recovery of fraudulent transfers, conversion, constructive trust, and an accounting. The complaint was amended shortly thereafter. A true and correct copy of the first amended complaint is attached as Exhibit "1." The Defendants answered and raised a number of affirmative defenses, including that the claims were barred by the applicable statutes of limitation. The Defendants requested a jury trial and did not consent to this Court's authority to enter a final order. In December 2021, I terminated the Richards Firm's representation and retained the Gabriel Firm as special counsel.

8. By order entered on October 23, 2024, a claim related to the pair of diamond earrings was resolved with the Bankruptcy Court finding that the Earring Proceeds were property of the estate. I am holding the Earring Proceeds.

9. Since the Defendants appeared, we have actively litigated the Trustee's Claims and engaged in extensive discovery, including expert discovery. I have utilized Development Specialists, Inc. ("DSI") as my expert witnesses. DSI has also served as my forensic accountants in this case.

10. Because of the Defendants' request for a jury trial and their non-consent to this Court's authority to enter a final order on the Trustee's Claims, the Court transferred the Adversary Proceeding to the District Court. The Defendants have requested extensions of various deadlines in the District Court's scheduling order, most recently obtaining a continuance of the jury trial from March 10, 2026, to May 19, 2026. The most recent order, a true and correct copy of which is attached as Exhibit "2," orders that no further continuances be requested. I have engaged in settlement discussions with the Defendants and have received extensive financial disclosures from the Defendants in the context of these discussions, with the disclosures subject to strict confidentiality provisions.

MOTION

11. While preparing for trial, I received an unsolicited offer to purchase the Trustee's Claims for $2 million from LHA Land LLC. A true and correct copy of the Asset Purchase and Sale Agreement (the "Agreement") is attached as Exhibit "3."

The Agreement provides that the sale of the Purchased Assets is subject to overbid. In connection with the notice of the hearing on this Motion, I will notify bidders that any overbid should be presented to me by email to me and my counsel at elissa.miller@gmlaw.com and kandrassy@raineslaw.com by 5:00 p.m. Pacific time the last business day prior to the hearing on this Motion. Any overbid should be for at least $2,050,000 and be accompanied by an asset purchase agreement identical to the Agreement in other than the identification of the buyer and the purchase price, that is executed by the overbidder. In order for a bidder to be qualified to participate in the auction, the overbid must be accompanied by both (1) a deposit with me by wire or other immediately available proceeds of $205,000 (I will provide instructions upon request) and (2) satisfactory evidence of the buyer's financial wherewithal to timely close the sale. If an overbid is timely received, then with the Court's approval, I will conduct an auction at the hearing on the Motion with minimum bid increments of $25,000. To be clear, all overbids, deposits and financial information must be received by me at my office, Greenspoon Marder LLP, 1875 Century Park East, Suite 1900, Los Angeles, CA 90067, or by wire (with an email notification) by no later than 5:00 p.m. Pacific time the last business day before the hearing on the Motion.

12. I have carefully considered a variety of factors in deciding to accept the offer and seek approval of the Agreement, and I believe that the sale of the Trustee's Claims for $2 million is in the best interests of the Estate. Although the complaint sought damages in excess of $25 million, the Defendants asserted the statute of limitations as a defense. Because the Internal Revenue Service is a creditor in the Debtor's case, I believe that a ten-year reach-back period is appropriate, which I have calculated would reduce the amount at issue to roughly $16 million. Although I am confident that I would prevail in her pursuit of the Trustee's Claims, any judgment would be likely to be appealed given Erika's past history of appealing orders in this case, and collection of the judgment would be speculative, especially given that Erika has

14

MOTION

substantial tax liabilities outstanding. I have also considered that Erika is 55 years old and that her primary source of income is from her appearances on the television series "The Real Housewives of Beverly Hills." The continuation of her contract with the show's production company is uncertain, as is the duration of the show's future airing. Based on information I have obtained and my experience as a trustee and as a lawyer, I believe that any meaningful recovery would likely require years to achieve.

13. I have also evaluated the fact that this will be a jury trial and the cost of a jury trial is expensive and juries are inherently unpredictable. This, together with the reality that a jury trial presents an increased risk of error with respect to evidentiary rulings, jury instructions, and the application of law to complex factual issues, weighs in favor of the sale. In addition, Erika Girardi has demonstrated a history of litigating through the appellate process. The appellate process could take two years or more and if a reversal of a judgment were obtained, a retrial would likely be required.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 15, 2026, at Los Angeles, California.

Elissa D. Miller

15

MOTION

# EXHIBIT 1

Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
Morani Stelmach (CA Bar No. 296670)
  morani@ronadlrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Special Litigation Counsel for Elissa D. Miller, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>      Debtor. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7 |
| ELISSA D. MILLER, Chapter 7 Trustee,<br><br>      Plaintiff,<br><br>v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>      Defendants | Adv. Proc. No. 2:21-ap-01155-BR<br><br>**TRUSTEE'S FIRST AMENDED COMPLAINT FOR:**<br><br>**1) DECLARATORY RELIEF; 2) TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542; (3) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER; (4) CONVERSION; (5) CONSTRUCTIVE TRUST; (6) ACCOUNT STATED; (7) OPEN BOOK ACCOUNT; (8) MONEY HAD AND RECEIVED; (9) UNJUST ENRICHMENT; AND (10) ACCOUNTING**<br><br>Date:     TBD<br>Time:     TBD<br>Place.:   Courtroom 1668<br>United States Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

///

For her First Amended Complaint for (1) Declaratory Relief; (2) Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542; (3) Avoidance and Recovery of Fraudulent Transfer; (4) Conversion; (5) Constructive Trust; (6) Account Stated; (7) Open Book Account; (8) Money Had and Received; (9) Unjust Enrichment; and (10) Accounting (the "Complaint"), plaintiff Elissa D. Miller, the duly appointed, qualified and acting Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of debtor Girardi Keese (the "Estate"), alleges as follows:

## STATEMENT OF JURISDICTION, PARTIES AND PROCEEDINGS

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), as this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to a case under title 11 of the United States Code which is still pending.

2.      Plaintiff Elissa D. Miller is the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate (the "Estate") created in the instant Chapter 7 bankruptcy case pending in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California which is styled In re Girardi Keese, bearing Case No. 2:20-bk-21022-BR (the "Bankruptcy Case").

3.      Girardi Keese (the "Debtor") is the debtor in the Bankruptcy Case and this case was initiated by the filing an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 18, 2020 (the "Petition Date").  The Court entered the Order for Relief on the involuntary petition on January 13, 2021.

4.      Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendant Erika N. Girardi ("Erika") is an individual that resides and/or has conducted business within the jurisdiction of this Court and is the wife of Thomas Girardi, owner and controlling member of the Debtor.

5.      Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendant EJ Global, LLC ("EJG") is a California limited

Exhibit 1, Page 17

2          TRUSTEE'S FIRST AMENDED COMPLAINT

liability company conducting business within the jurisdiction of this Court. EJG was formed in 2008 and is exclusively owned and controlled by defendant Erika. Defendant Erika is the only manager and sole 100% member of EJG. Defendant Erika filed her income from EJG on Schedule C of her personal income tax returns for many years because she was the sole owner and member of EJG. Defendant Erika going back to 2008, was the only manager of the EJG. The articles of organization show EJG was only managed by Erika. Defendant Erika was the only one in control of EJG.

6. Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendant Pretty Mess, Inc. ("PMI") is a California corporation conducting business within the jurisdiction of this Court. PMI was formed in 2021 as a successor entity to EJG and is also owned and controlled exclusively by defendant Erika. Defendant Erika is the only office or director of PMI. It was formed by her business manager, who was referred to her by Lisa Rinna, a cast mate of Erika's on her television show, "The Real Housewives of Beverly Hills". Plaintiff alleges that in order to avoid the large liability to EJG and its alter ego Erika Girardi, Erika incorporated PMI as a personal services company, just like EJG, and has diverted her going forward income to this entity to avoid creditors of EJG and Erika Girardi. PMI is a mere continuation of EJG, a personal services corporation using the same expenses previously paid by the Debtor. Erika is the same 100% owner of both EJG and PMI and the formation of PMI is for the fraudulent purpose of escaping liability for EJG and Erika's debts. Specifically, it was only after she left Thomas Girardi and the Debtor stopped paying for EJG and Erika's debts, did Erika incorporate PMI which does nothing different that EJG. Both entities are tax pass through to the same beneficial owner, Erika Girardi.

7. Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendants EJG and PMI is the alter ego of each other and of defendant Erika, in that each of them has maintained such a unity of interest and ownership that the separate personalities of the entities and the individual defendant no longer exist.

Exhibit 1, Page 18

3     TRUSTEE'S FIRST AMENDED COMPLAINT

8. Plaintiff further alleges that the entity EJG is completely a shell entity, has no capital in it whatsoever, has a single owner, with no separate books, current bank accounts, or other indicia of corporate formality. EJG was a personal service company for Erika Girardi aka Erika Jayne. EJG meets all requirements for an alter ego finding. Clearly, if EJG was allowed to shield Erika Girardi from over $25,000,000 in expenses just spent on her, there would be an egregious inequitable result. The existence of EJG was merely an instrumentality to funnel a large scale tax fraud from the Debtor to the benefit of Defendant Erika. No one else but Defendant Erika benefitted from the expenses described below. In response to the demand letter by the Trustee, Erika has taken the ludicrous position that since she did not receive the payments directly from the Debtor she is not liable and if EJG is liable, it would not expand to her personally as she was just a member. The Plaintiff alleges that all payments and monies received by Erika were via her American Express card issued to her personally with her own number, and vendors picked by her and all of the payments were directed by her. Just like she has taken the ludicrous position that attorneys may not comment about her case and facts related to her conduct, she has not stopped there. She attempts to create a distinction between handing her money directly versus paying all of her bills directly. The distinction, like her prior motion for reconsideration is meritless. Any payments made for her benefit are her responsibility.

9. Erika, EJG, and PMI all have the same attorney representing them in this action further showing they are all one in the same. The attorney believes all of the interests are completely aligned which further supports each of them are the alter ego of one another.

10. Defendants Erika, EJG and PMI are collectively referred herein as the "Defendants").

**GENERAL FACTUAL ALLEGATIONS**

11. Plaintiff is informed and believes and, on that basis alleges thereon, that in or around August 2012, the Court entered an Order approving a settlement agreement in

the Marston v. Marston state court action, San Bernardino Superior Court Case Number CIVRS 910950 (the "Court Approved Settlement Agreement"). A true and correct copy of the Court Approved Settlement Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by this reference.

12. Plaintiff is informed and believes and, on that basis alleges thereon, that the Debtor diverted and transferred its right to receive attorneys' fees from the Court Approved Settlement Agreement in the form of an ongoing stream of payments from the State of California Lottery to the Defendants (the "Lottery Payments").

13. Plaintiff is informed and believes and, on that basis alleges thereon, that the Defendants received more than $242,658 in payments from the State of California Lottery from 2012 to 2021. The Defendants are scheduled to still receive $78,000 in payments from the State of California Lottery in years 2022 through 2025. The payments are part of a continuous course of conduct and are on-going. Erika directly agreed to receive the payments, personally signed the lottery forms directing the payments to her, and on information and belief, approved the stipulation authorizing the payments to her. Erika even withheld the 2021 payment. At all times prior to 2021, Erika concealed the existence of the lottery payments settlement and payment instructions. Even though Erika signed the California Lottery Payee Setup in Exhibit C, she willfully concealed this income or assignment from the Trustee AFTER the Chapter 7 relief was entered and was confronted by the Trustee's Special Counsel. The Ninth Circuit has held that in fraudulent transfer cases, when some transfers occur outside the statute of limitations and some occur within the statute of limitations, a court "may presume that the earliest payments received by the investor are payments against the investor's claim for restitution." Donell v. Kowell, 533 F.3d at 762, 774 (9th Cir.2008). In this case, Plaintiff alleges that the fact that notwithstanding the concealment by Erika of these lotter payments, any statute is reset upon the next payment becoming due as the transfer is not complete until the last payment in 2025. Plaintiff alleges that any applicable statutes of limitation would run no earlier than 2032, seven years after the last payment. Plaintiff

further alleges that the Trustee's Complaint was filed within one year of discovering Erika's diversion of the lottery proceeds   (See Donell v. Mojtahedian, 976 F. Supp. 2d 1183, 1189 (C.D. Cal. 2013).

14.     Plaintiff intercepted and is currently holding funds in the amount of $19,760.00 which represents the Lottery Payments for the year 2021, which funds the Plaintiff is currently holding in trust pursuant to an agreement with defendant Erika pending resolution of this dispute and further order of the Court.  A true and correct copy of the letter agreement regarding 2021 Lottery Payments is attached hereto, marked as Exhibit "B" and incorporated herein by this reference.   Erika refuses to release this payment even though she has no legal claim to the money as she was not an attorney who earned any fees.   The fact that Erika has claimed that the Lottery Payments is her money and refuses to release it shows her knowledge and admission as to the nature of the Debtor's income and operations.

15.     Plaintiff is informed and believes and, on that basis alleges thereon, that Lottery Payments belong to the Girardi Keese bankruptcy estate and that none of the Lottery Payments made to the Defendants have been repaid to the Debtor and remain outstanding.   A true and correct copy of the demand letter regarding the Lottery Payments is attached hereto, marked as Exhibit "C" and incorporated herein by this reference.  Erika has contended that the Debtor may have received some of the Lottery Payments alleged herein.  It was Erika who directed the Lottery Payments.  To the extent the Debtor has already received some of the earlier Lottery Payments, the Debtor will credit those from the prayer in this action.

16.     Plaintiff is informed and believes and, on that basis alleges thereon, that the Defendants received jewelry and other luxury items purchased using the Debtor's funds (the "Luxury Items").   As discovery is taken, the Trustee will outline the specific luxury items.  Erika is aware of the $25,000,000 plus in expenses paid for her and she is in the best position to itemize her jewelry, clothes, and other personal property.

///

17.     Plaintiff is informed and believes and, on that basis alleges thereon, that diverting and/or transferring of the Lottery Payments and the Luxury Items to the Defendants are collectively referred herein as the "Transfers."

18.     Plaintiff is informed and believes and, on that basis alleges thereon, that the Debtor and the Defendants conspired to conceal the Transfers and keep these assets away the Debtor's creditors.  Plaintiff is further informed and believes and, on that basis alleges thereon, that due to the concealment of the Transfers, the Trustee only recently discovered the Transfers and therefore any applicable deadlines and statute of limitations are tolled.

19.     Plaintiff is informed and believes and, on that basis alleges thereon, that additionally, based on the Debtor's books and records and tax returns, the Debtor is owed no less than $25,592,261.26 plus interest in receivables from the Defendants (the "Receivables").

20.     Specifically, the Receivables have been identified as no less than $25,592,261.26 in payments made by the Debtor for charges made by the Defendants. The payments by the Debtor were exclusively for the benefit of the Defendants.   The expenses consist largely of expenses to promote Erika personally.   Moreover, the over $14,000,000 in American Express charges were made by Erika on a card issued to her. The other $11,000,000 or so in vendor payments were made for Defendant Erika's benefit only.  None of the payments appear to be legitimate law firm payments but for the sole benefit of Defendant Erika's massive spending, glam squad, talent professionals, image professionals, travel, clothes, purses, shoes, jewelry and other lavish expenses that were meticulously added to the Debtor's books as a valid and enforcement open book account and account stated and receivable.

21.     Plaintiff further alleges that Defendant Erika received the complete benefit of the Receivables and does not get any sort of immunity or windfall from the Debtor's tax fraud for her community property law firm and entertainment business.

///

22.     Plaintiff will contend it will not be a defense to this Complaint simply because Defendant Erika contends she did not know her husband was maintaining a debt. It would be a miscarriage of justice, if Defendant Erika was allowed to simply walk completely free of owing over $25,000,000 to the Estate. Erika signed all of her tax returns, numerous credit card slips, and was well aware of the money she spent on the Debtor's credit cards and the Debtor's payment of her personal expenses. Her feigned willful blindness and ostrich approach to these expenditures will do absolutely nothing to limit her liability.

23.     Erika has direct knowledge that for at least 12 years, all of her expenses were being paid by the Debtor as she was generating them. Moreover, Erika has repeatedly contended, "It is expensive to be me". In fact, there was an entire publicly aired episode on "The Real Housewives of Beverly Hills" entitled, "It's Expensive to Be Me". (Season 7, Episode 7). The glam cannot be supported by a sham. This decade long spending spree was improperly paid for by Erika's community property law firm. Erika has repeatedly contended that she is entitled to any left over money from this Estate. She has signed years of joint tax returns. Even though knowledge is not required for liability, it is alleged she knew exactly where the money was coming from when her $175,000 per month spending budget was paid each month by the law firm on the law firms credit card issued to her personally as well as the submissions for payment were made by her and her alone. Erika directed all of her personal vendors to be paid by the law firm. Only Erika knew that her entire singing, acting, bling, brand, glam squad, and other Erika only expenses were completely funded by the Debtor. Even to this today, it is alleged that Erika continues to receive funding from other sources of unknown origin to cover her extravagant lifestyle.

24.     Erika shows no sign of slowing down with the continued tax frauds which she benefitted from for years, income tax avoidance schemes referenced in this Complaint, and belief that she can just hide large sources of income under the banner of privacy. The Trustee's Special Litigation counsel has now been asking for many

Exhibit 1, Page 23

8                    TRUSTEE'S FIRST AMENDED COMPLAINT

months, where is the source of income that has generated over $600,000 in expenditures to Erika personally. Erika has refused to disclose who or how she is getting access to large swaths of capital to finance frivolous legal activities and threatening letters to the Trustee's Special Litigation Counsel. Notwithstanding the Court's findings and exclusion of any proffered evidence, Erika continues to file frivolous appeals and takes meritless positions all geared towards hindering the Trustee's investigation. Erika believes she is above the law and is entitled to shield and conceal her sources of capital from the Trustee's Special Litigation Counsel notwithstanding they are not privileged. Her reckless and shotgun approach to litigation are all consistent with her husband's menacing and threatening litigation style. Erika directed her counsel at least five times on August 25, 2021 to threaten the Trustee's Special Litigation Counsel with Rule 11 sanctions if he did not drop most of the Trustee's complaint. All of Erika's threats only prove her direct involvement in the litigation and her desperate attempts to try and intimidate her opponents with a chronic stream of motions to disrupt the investigation and the Trustee's choice of counsel.

25. The Receivables, in the form of an open book account, has been entered and maintained each year since 2008 on the Debtor's books and records and tax returns. The book account is based upon a contract that is implied by the parties' conduct, business records, excel spread sheets, and other writings. Plaintiff alleges the book account had entries and were added to it from time to time. EJG and Erika had financial transactions with the Debtor. The Debtor in a regular course of business kept an electronic account of the debits and credits of the transactions, EJG, Erika, and the successor entity PMI, owe money on the account, and the amount due is specified in paragraph 19 and elsewhere herein. The last entry for the Receivables was as recent as June 2020. Interest is accruing at 10% per year on the Receivables.

26. It is further alleged that "[a]ctions to recover on an account stated or a book account accrue on the date of the last item or entry in the account." Prof'l Collection Consultants, Cal. App. 5th at 966, 214 Cal.Rptr.3d 419; Cal. Civ. P. Code § 337(2)

("Where an account stated is based upon an account of more than one item, the time shall begin to run from the date of the last item."); <u>R.N.C. Inc. v. Tsegeletos</u>, 231 Cal.App.3d 967, 971-972, 283 Cal.Rptr. 48 (1991) ("the four-year period of limitations on a book account begins as of the last entry in the book account."). <u>Ordinario v. LVNV Funding, LLC</u>, 721 F. App'x 602, 604 (9th Cir. 2017).  The statute expires for an open book account on June 20, 2024.

27.     Plaintiff is informed and believes and, on that basis alleges thereon, that although demand has been made, none of the Receivables owed by the Defendants to the Debtor have been repaid to the Debtor and remain outstanding.  A true and correct copy of the demand letter regarding the Receivables is attached hereto, marked as Exhibit "D" and incorporated herein by this reference.  A redacted copy of her Schedule C from Erika's 2018 personal federal income tax return is attached as Exhibit "E" showing she is the 100% owner of EJG.  Statement 8 of the Schedule C specifically shows, for example, that in 2018, Erika claimed $2,127,004.00 in expenses for her own company but which were paid for by the Debtor.   The expenses detailed on Statement 8 of the Schedule C show that the Debtor paid for the professionals that created and maintained the brand Erika Jayne and benefitted only Defendant Erika.  A whopping $1,466,197.00 was paid for production only and $508,448.00 in professional services in 2018 alone. Erika Girardi personally signed these tax returns.  Erika is charged with knowledge of the contents of the return.  The expenses only benefitted her brand and performer career.

28.     Plaintiff is informed and believes and, on that basis alleges thereon, that defendant Erika has used her glamor and notoriety to continue to aid and abet in sham transactions that have occurred with respect to large transfers of assets from the Debtor to the Defendants.

///

///

///

///

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

29.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

30.     An actual controversy exists between the Plaintiff and the Defendants concerning their respective rights and duties in that the Trustee contends that the Defendants currently have no ownership interest in the Lottery Payments and the Luxury Items and that the Lottery Payments and the Luxury Items are property of the Estate. Whereas, the Defendants may dispute the Trustee's contention and may assert an ownership interest in the Lottery Payments and the Luxury Items.

31.     Plaintiff desires a judicial determination of her rights and duties and a declaration that the Defendants have no ownership interest in the Lottery Payments and the Luxury Items and that the Lottery Payments and the Luxury Payments are property of the Estate.

## SECOND CLAIM FOR RELIEF

### (Turnover Of Property Of The Estate Pursuant To 11 U.S.C. § 542(a))

32.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

33.     Plaintiff is informed and believes and, on that basis alleges thereon, that the Lottery Payments, the Luxury Items  and the Receivables are all property of the Estate pursuant to, among other things, 11 U.S.C. § 541.  Plaintiff also alleges that based upon the receipt of the benefit of the payments from the Debtor in the amount of $25,592,261.26, the Defendants shall turnover any property purchased with those payments made to vendors on the Defendants' behalf.

34.     Plaintiff is informed and believes and, on that basis alleges thereon that the Defendants are in possession, custody or control, during this bankruptcy case, of

Exhibit 1, Page 26

11      TRUSTEE'S FIRST AMENDED COMPLAINT

property that the Trustee may use, sell or lease under 11 U.S.C. § 363 and such property is not of inconsequential value or benefit to the Estate.

## THIRD CLAIM FOR RELIEF

### (Turnover Of Property Of The Estate Pursuant To 11 U.S.C. § 542(b))

35. Plaintiff realleges each and every allegation contained in paragraphs 1 through 34 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

36. Plaintiff is informed and believes and, on that basis alleges thereon, that the Lottery Payments, the Luxury Items and the Receivables are all property of the Estate pursuant to, among other things, 11 U.S.C. § 541. Plaintiff also alleges that based upon the receipt of payments from the Debtor for $25,592,261.26, the Defendants shall turnover any property purchased with those payments made to vendors on the Defendants' behalf.

37. Plaintiff is informed and believes that the Defendants owe a debt that is property of the Estate and that is matured, payable on demand, or payable on order and such debt may not be offset under 11 U.S.C. § 553 against a claim against the Debtor.

## FOURTH CLAIM FOR RELIEF

### (Avoidance Of Fraudulent Transfer, Actual Intent, Pursuant To [11

### U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(1))

38. Plaintiff realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and, by this reference, incorporates the allegations as though set forth fully herein.

39. Plaintiff is informed and believes and, based thereon, alleges that the Transfers were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

40. By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(1).

///

## FIFTH CLAIM FOR RELIEF

**(Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To**

**11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.05)**

41.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint and, by reference, incorporates the allegations as though set forth fully herein.

42.    Plaintiff is informed and believes and, based thereon, alleges that the Transfers were made for less than reasonably equivalent value at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent.

43.    By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.05.

## SIXTH CLAIM FOR RELIEF

**(Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To**

**11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(A))**

44.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint and, by reference, incorporates the allegations as though set forth fully herein.

45.    Plaintiff is informed and believes and, based thereon, alleges that the Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Transfers, and that at the time of the Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

46.    By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(A).

///

///

///

///

Exhibit 1, Page 28

13        TRUSTEE'S FIRST AMENDED COMPLAINT

**SEVENTH CLAIM FOR RELIEF**

**(Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To**

**11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(B))**

47.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint and, by this reference, incorporates the allegations as though set forth fully herein.

48.     Plaintiff is informed and believes, and based thereon, alleges that the Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Transfers, and that the Debtor intended to incur, or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

49.     By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(B).

**EIGHTH CLAIM FOR RELIEF**

**(Recovery Of Avoided Transfer Pursuant To 11 U.S.C. § 550(a))**

50.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint and, by this reference, incorporates the allegations as though set forth fully herein.

51.     By reason of the foregoing, Plaintiff is entitled to recover the Transfers or their value from the Defendants pursuant to 11 U.S.C. § 550(a).

**NINTH CLAIM FOR RELIEF**

**(Conversion)**

52.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint and, by this reference, incorporates the allegations as though set forth fully herein.

///

///

///

Exhibit 1, Page 29

14     TRUSTEE'S FIRST AMENDED COMPLAINT

53. The Lottery Payments, the Luxury Items and the Receivables are all property of the Estate and the Defendants have substantially, intentionally, actually and wrongfully interfered with the Plaintiff's right of possession of the Lottery Payments, the Luxury Items and the Receivables.

54. The Defendants have refused to return the Lottery Payments, the Luxury Items and the Receivables despite Plaintiff's demand for same and instead the Defendants have received and/or diverted the Lottery Payments, the Luxury Items and Receivables to themselves for their own benefit.

55. Plaintiff is entitled to damages against the Defendants for conversion of the Lottery Payments, the Luxury Items and the Receivables in an amount to be proved at trial pursuant to Cal. Civ. Code § 3336.

56. Plaintiff also alleges that base upon the receipt of payments from the Debtor for $25,592,261.26, the Defendants shall turnover any property purchased with those payments made to vendors on the Defendants behalf. The funds used to make those payments, on information and belief, came from wrongfully appropriated settlement funds due clients of the Debtor and other joint ventures, attorney's fees splitting cases or other victims of the Debtor's former owner, Thomas Girardi. Discovery will show that Erika was not entitled to the benefit of the expenses paid for her by the Debtor with other parties' earmarked funds.

## TENTH CLAIM FOR RELIEF

### (Constructive Trust)

57. Plaintiff realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

Exhibit 1, Page 30

15      TRUSTEE'S FIRST AMENDED COMPLAINT

58. By virtue of the Defendants' wrongful acts, the Defendants hold the wrongfully acquired funds and property of the Estate and proceeds acquired in exchange for the wrongfully acquired funds and property of the Estate as constructive trustees for the benefit of the Plaintiff and the Estate.

## ELEVENTH CLAIM FOR RELIEF

### (Account Stated)

59. Plaintiff realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

60. Plaintiff is informed and believes and, on that basis alleges thereon, that within the last four (4) years an account was stated in writing between the Debtor and the Defendant wherein it was agreed that the Defendants were indebted to the Debtor for the the Receivables. The Receivables owed to the Debtor by the Defendants remain outstanding in an amount in excess of $25,000,000 or in an amount to be proved at trial, plus interest at the maximum rate permitted by law.

## TWELFTH CLAIM FOR RELIEF

### (Open Book Account)

61. Plaintiff realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

62. Plaintiff is informed and believes and, on that basis alleges thereon, that within the last four (4) years, the Defendants became indebted to the Debtor on an open book account for money due on account of the Receivables (an amount no less than $25,592,261.26 or in an amount to be proved at trial) for monies provided to or for the benefit of the Defendants and for which the Defendants agreed to pay.

63. No part of the Receivables have been paid although demand has been made and there is now due, owing, and unpaid from the Defendants to the Debtor a sum no less than $25,592,261.26 or in an amount to be proved at trial, plus interest at the

Exhibit 1, Page 31

16          TRUSTEE'S FIRST AMENDED COMPLAINT

maximum rate permitted by law.

## THIRTEENTH CLAIM FOR RELIEF

### (Money Had And Received)

64. Plaintiff realleges each and every allegation contained in paragraphs 1 through 63 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

65. Plaintiff is informed and believes and, on that basis alleges thereon, that within the last four (4) years, the Defendants received and/or benefitted from the Receivables in an amount no less than $25,592,261.26 or in an amount to be proved at trial from the Debtor that was intended for the use and benefit of the Debtor.

66. No part of the Receivables have been paid although demand has been made and there is now due, owing and unpaid from the Defendants to the Debtor an amount no less than $25,592,261.26 or in an amount to be proved at trial, plus interest at the maximum rate permitted by law.

## FOURTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

67. Plaintiff realleges each and every allegation contained in paragraphs 1 through 63 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

68. As a result of the wrongful acts of the Defendants alleged herein, the Defendants have been unjustly enriched at the expense of the Estate and its creditors. The Defendants have derived and continue to derive benefit from their wrongful acts.

69. The Defendants are under an obligation to pay the Plaintiff and the Estate all amounts by which the Defendants have been unjustly enriched in an amount according to proof.

///

///

///

Exhibit 1, Page 32

17          TRUSTEE'S FIRST AMENDED COMPLAINT

## FIFTEENTH CLAIM FOR RELIEF

### (Accounting)

70. Plaintiff realleges each and every allegation contained in paragraphs 1 through 69 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

71. The Defendants are in possession of money and property including, but not limited to, the Lottery Payments, the Luxury Items and the Receivables, that rightfully belong to the Estate as were fraudulently obtained by the Defendants. The amount owed by the Defendants to the Estate cannot be easily ascertained without an accounting of the money and property received by the Defendants.

72. Plaintiff also alleges that the EJG and Erika received from the Debtor $25,592,261.26. The Plaintiff needs an accounting of those funds.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

**On the First Claim for Relief**:

1. For a judgment that the Defendants have no ownership interest in the Lottery Payments and the Luxury Items and the Lottery Payments and the Luxury Items are property of the Estate;

**On the Second and Third Claims for Relief**

2. For a judgment against the Defendants for turnover of the Lottery Payments, the Luxury Items, the Receivables and any profits and proceeds thereof under 11 U.S.C. § 542(a) and/or 542(b);

**On the Fourth, Fifth, Sixth and Seventh Claims for Relief**:

3. For a judgment against the Defendants that the Transfers be avoided;

**On the Eighth Claim for Relief:**

4. For a judgment against the Defendants that the Transfers, or their respective value, be recovered for the benefit of the estate pursuant to 11 U.S.C. § 550;

**On the Ninth Claim for Relief:**

5. For a judgment against the Defendants for conversion of the Lottery

Exhibit 1, Page 33

18          TRUSTEE'S FIRST AMENDED COMPLAINT

Payments, the Luxury Items and the Receivables in an amount to be proved at trial pursuant to Cal. Civ. Code § 3336;

**On the Tenth Claim for Relief:**

6.    For a judgment against the Defendants declaring that the wrongfully acquired funds and property of the Estate and proceeds acquired in exchange for the wrongfully acquired funds and property of the Estate are held in trust for the benefit of the Plaintiff and the Estate;

**On the Eleventh, Twelfth and Thirteenth Claims for Relief:**

7.    For a judgment against the Defendants in an outstanding amount of no less than $25,592,261.26 or in an amount to be proved at trial, plus interest at the maximum rate permitted by law.

**On the Fourteenth Claim for Relief:**

8.    For a judgment against the Defendants ordering the Defendants to pay the Plaintiff and the Estate all amounts by which the Defendants have been unjustly enriched in an amount according to proof;

**On the Fifteenth Claim for Relief:**

9.    For a judgment against the Defendants ordering an accounting of all money and property received by the Defendants from the Debtor and for payment of the amount due from the Defendants as a result of the accounting;

**On All Claims for Relief:**

10.   For such other and further relief as the Court deems just and proper.

DATED:  August 26, 2021          Respectfully submitted,

LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC

By:  _____/s/ Ronald Richards_____
Ronald Richards
Attorneys for Elissa D. Miller, Chapter 7 Trustee

Exhibit 1, Page 34

19          TRUSTEE'S FIRST AMENDED COMPLAINT

# EXHIBIT A

MATTHEW R. EASON  SBN 160148
KYLE K. TAMBORNINI SBN 160538
LAW OFFICES OF EASON & TAMBORNINI
1819 K Street, Suite 200
Sacramento, CA 95814
Tel: (916) 438-1819
Fax: (916) 438-1820

Attorneys for Defendant

F I L E D
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

AUG - 2 2012

BY _____
CHRISTINA L. BANDFIELD, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN BERNARDINO – RANCHO CUCAMONGA

DISTRICT

| | |
|---|---|
| MAURICE MARSTON, ET AL<br><br>Plaintiffs,<br><br>v.<br><br>NATALIE MARSTON-SALEM, f/k/a or a/k/a NATALIE MARSTON<br><br>Defendant. | Case No.: CIVRS 910950<br><br>STIPULATION AND [PROPOSED] ORDER AUTHORIZING CALIFORNIA LOTTERY TO DISBURSE LOTTERY WINNINGS & FINAL DISMISSAL OF ACTION |

Plaintiff Maurice L. Marston ("Plaintiff") and defendant Natalie E. Marston-Salem ("Defendant") hereby stipulate, through their undersigned counsel of record, to the following Order:

1. Defendant Natalie E. Marston-Salem was entitled to receive twenty (20) annual payments of $260,000.00 for twenty (20) years from the California Lottery winnings. Pursuant to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment by the Defendant of 100% of the gross annual amount of California Lottery winnings less Federal taxes and deductions authorized by law for the calendar year 2012 as follows:

STIPULATION AND ORDER FOR ASSIGNMENT Page 1

Exhibit 1, Page 36

a. 60% ($156,000.00) to Maurice L. Marston and Nancy Norton-Marston

b. 13.34 % ($34,684.00) to ████ ███

c. 13.33% ($34,658.00) to Erika Girardi

d. 13.33 % ($34,658.00) to ███████████

2. Pursuant to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment by the Defendant of 75% of the gross annual amount of California Lottery winnings of $260,000.00 less Federal taxes and deductions authorized by law for the calendar years 2013 through 2025 as follows:

a. 45% ($117,000) to Maurice L. Marston and Nancy Norton-Marston

b. 10 % ($26,000) to ██████████

c. 10% ($26,000) to Erika Girardi

d. 10 % ($26,000) to ██████████

Defendant will retain $65,000.00 or twenty-five percent (25%) of the gross amount of California Lottery winnings for the calendar years 2013 through 2025. For the calendar years 2026 through 2028, Defendant will receive one hundred percent (100%) of the gross annual amount of the California Lottery winnings of $260,000.00.

3. The Court authorizes the California Lottery to disburse the above stated amounts, less federal taxes and deductions that the Lottery is required by law to withhold, to Plaintiff and the assignees set forth in Paragraph 1 herein.

4. The Lottery will pay the balance of the lottery prize to Defendant Natalie E. Marston-Salem after the allocations set forth in Paragraph 2a. – d. herein.

5. Additionally, pursuant to Section 8880.325 and Regulation III(B)(2), the Court finds as follows:

(a) Defendant/Winner's name on California Lottery claim form: Natalie E. Marston. She was later married and changed her name to Natalie E. Marston-Salem.

(b) Defendant/Winner's address and social security number: Confidential/has already

STIPULATION AND ORDER FOR ASSIGNMENT Page 2

been provided to the California Lottery;

(c)    Plaintiff/Assignee's name: Maurice L. Marston and Nancy Norton-Marston (Federal taxes will be paid under Maurice L. Marston's Social Security Number as provided under separate cover);

(d)    Plaintiff/Assignee's address, birth date, and social security number: Confidential/will be provided to the California Lottery under separate cover;

(e)    Additional assignees' names: ████████████, Erika Girardi, and ████████ ████████████

(f)    Additional assignees' addresses, birth dates, and social security numbers: Confidential/will be provided to the California Lottery under separate cover;

(g)    Defendant/Winner has reviewed and understands the terms of the foregoing assignment; understands that she will not receive the assigned prize payments or a portion thereof for the payments assigned; has entered into the agreement of her own free will without undue influence or duress and not under the influence of drugs or alcohol; has had an opportunity to retain and consult with an independent financial and tax advisor(s) concerning the effect of the assignment, who have fully advised her about the tax consequences of the assignment; and has been represented by independent legal counsel, Matthew R. Eason, Eason & Tambornini, ALC who has advised her of her legal rights and obligations under the assignment and whose State Bar of California number is 160142;

(h)    Defendant/Winner is married and her spouse has executed this stipulation disclaiming any interest, as provided in his Declaration, and there are no other non-spouse co-owners, claimants, or lien holders asserting a claim against Defendant/Winner's lottery winnings, including, but not limited to, payments that are the subject of this assignment;

(i)    Defendant/Winner has obtained and filed with the Court a notification from the California State Lottery of any liens, levies, or claims, and the Controller's office of any offsets asserted as of that time against Defendant/Winner, as reflected in their respective official records as of the time of the notification; and

(j)    The California Lottery and the State of California are not parties to the proceeding

STIPULATION AND ORDER FOR ASSIGNMENT Page 3

and the California Lottery and the State of California may rely upon this order in disbursing the lottery prize payments that are the subject of this order. Further, upon payment of lottery prize monies pursuant to an order of the court, the California Lottery, the director, and commission and the employees of the California Lottery, and the State of California shall be discharged of any and all liability for the lottery prize paid, and these persons and entities shall have no duty or obligation to any person asserting another interest in, or right to receive, the lottery prize payment.

6. The June 5, 2012 annual lottery payment that is currently being held by the Lottery will be disbursed upon confirmation of the assignment and the necessary time to set up the payees.

7. The Court hereby dismisses the above-captioned action with prejudice with each party to bear its own attorneys' fees and court costs.

Dated: July 30, 2012

_____
Natalie E. Marston-Salem, Defendant

Dated: July 30 2012

_____
John Salem, Consenting Spouse

Dated: July 30, 2012

_____
Maurice L. Marston, Plaintiff

Dated: July 30, 2012

_____
Nancy Norton-Marston, Consenting Spouse

ORDER

IT IS SO ORDERED.

DATED: ~~July ____, 2012~~  **AUG 0 2 2012**

**JOSEPH R. BRISCO**

_____
HONORABLE JOSEPH R. BRISCO
Judge of the Superior Court

STIPULATION AND ORDER FOR ASSIGNMENT Page 4

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of June __, 2012, by and between Maurice Marston ("Plaintiff"), Natalie Marston Salem ("Defendant"). Plaintiff and Defendant are also sometimes referred to herein collectively as the "Parties" and/or individually as a "Party."

## RECITALS

WHEREAS, on September 29, 2009, Plaintiff filed a action for damages, declaratory relief, and injunctive relief against the Defendant. The case is commonly known as Marston v. Marston, San Bernardino Superior Court Case Number CIVRS 910950 ("The Action");

WHEREAS, on November 29, 2011, judgment was entered in "The Action" on behalf of the Plaintiff and against the Defendant;

WHEREAS, Defendant appealed that judgment;

WHEREAS, the Parties, their respective counsel, and Nancy Marston attended a settlement conference before the Fourth District Court of Appeals Presiding Justice Manuel A. Ramirez.

WHEREAS, as of the drafting of this agreement, the California Lottery has made the first three years of a twenty year payout to the Defendant. The 2012 payment representing year four has not yet been made.

WHEREAS, because of the time, expense and uncertainties associated with further litigation between the Parties and in exchange for the mutual considerations exchanged and agreed to by the Parties under this Agreement, the Parties agree to fully, finally and completely resolve and settle all issues between the Parties, as expressly set forth in this Agreement;

## TERMS

1.    In connection with the Recitals set forth above, which are all fully incorporated herein by reference, the Parties hereby agree to fully, finally and completely resolve and settle all past and present disputes, known and unknown, between them.

2.    Defendant has paid Plaintiff in consideration of this agreement the sum of $135,000.

3.    As of the drafting of this agreement, the payment for 2012 (year 4) from the California State Lottery has not been issued. The parties agree that the proceeds of that payment will be surrendered promptly to the Plaintiff. If the check comes in made payable to the Defendant, the Defendant will negotiate the check, and immediately upon confirmation of availability of funds will submit the entire funds to the Plaintiff. If the check comes in made payable to multiple parties which include the Defendant, Defendant will promptly execute the check and surrender the check to the Plaintiff.

Page 1 of 4

6-6-12

Exhibit 1, Page 40

4.    The parties agree that the Defendant will voluntarily assign to Plaintiff, or his to his named assignees a seventy-five percent (75%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025). Defendant will retain a twenty-five (25%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025), and she shall retain 100% of the payments for years eighteen (18) through twenty (20) (Calendar years 2026- 2028).

5.    Plaintiff will apply for, and Defendant will cooperate in, the executing of court documents to have the assignments contemplated above approved by a court of competent jurisdiction pursuant to Government Code Section 8880.325(j).

6.    Upon satisfaction of the terms above, the Defendant will file a notice of abandonment of appeal, and the Plaintiff will cause to be filed a satisfaction of judgment in full.

7.    In consideration of the Settlement Payment, and promises of the Parties specified in this Agreement, the Parties hereby fully, finally and forever release, acquit, exonerate, waive, settle and discharge, each other, and each Party's attorneys, insurance carriers, agents, servants, representatives, employees, subsidiaries, affiliates, directors, board members, partners, officers, directors, shareholders, predecessors, successors-in-interest, assigns, heirs, spouses, and all persons acting by, through, under or in concert with them, of and from any and all past and present claims, demands, obligations, actions, causes of action, damages, costs, attorneys' fees, losses of service, expenses, liability, suits, and compensation of any nature whatsoever, whether based in tort, contract, or any other theory of recovery arising from the recitals set forth above, including without limitation any claim or claims that may have been filed between them. The foregoing is hereinafter referred to as the "Released Matters."

8.    The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9.    Except for the obligations set forth in this Agreement, the Parties, after consulting with their respective counsel, hereby waive and relinquish any and all rights and benefits which they may have under, and which may be conferred upon them by, the provisions of Section 1542 regarding the Released Matters to the fullest extent that they may lawfully waive such rights or benefits. The Parties declare that they understand the full nature, extent and import of Section 1542 of the California Civil Code and have been so advised, and/or have had the opportunity to be so advised, by their respective attorneys.

10.    The Parties each represent and warrant that they/it are the sole owner of all rights, title, and interests in and to all of the Released Matters settled under this Agreement and that they have not heretofore assigned, transferred, or purported to assign and/or transfer to any person or entity any matters, or portions thereof, settled and released under this Agreement.

11.    The settlement, releases and other matters set forth herein are a compromise and

Page 2 of 4

6·6·12

Exhibit 1, Page 41

settlement of disputed and contested claims between the Parties, and nothing contained herein shall be construed as an admission by any Party of any obligation and/or liability of any kind to any other Party.

12.     This Agreement contains and embodies the entire agreement of the Parties with regard to the obligations under this Agreement and to the Released Matters covered in this Agreement, and no representations, inducements, or other agreements, oral or otherwise, not embodied herein, exist nor shall they be of any force or effect. This Agreement can only be modified or amended by a subsequent written agreement signed by the Parties.

13.     This Agreement is binding upon and shall inure to the benefit of the Parties, their respective agents, employees, representatives, shareholders, officers, directors, partners, board members, divisions, corporations, subsidiaries, parents, affiliates, assigns, heirs, predecessors, spouses, and successors, past, present, and future, and all of their insurers, guarantors, sureties and reinsurers.

14.     The Parties to this Agreement shall each be deemed to have drafted this Agreement, such that no ambiguity in this Agreement, if any, shall be construed against any Party.

15.     The Parties shall each bear their own costs, expenses and fees, of all kind, including attorney, consultant, and expert fees, up through the date this Agreement is entered into, regarding the Released Matters.

16.     The Parties agree to execute any and all such other documents and perform such other acts as are necessary to give effect to the intent and purposes of this Agreement.

17.     If any part, provision, condition, or term of this Agreement, or the application thereof to any person, Party or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each part, provision, condition or term of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

18.     Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the Parties hereto. This Agreement and the performance of the Parties' obligations hereunder are for the sole and exclusive benefit of the Parties.

19.     This Agreement is entered into and shall be subject to the laws of the State of California. Any dispute shall be resolved before the Superior Court of the County of Riverside which shall retain exclusive jurisdiction over this matter.

20.     This Agreement may be signed in counter-parts; all of which taken together shall be construed as one original. Telefaxed signatures shall constitute original signatures.

21.     Each Party hereto represents and warrants that it is represented by, or has had the opportunity to consult with, legal counsel and that it is authorized to sign this Agreement and bind the respective Party hereby and that all acts necessary to confer such authority have been duly, properly and legally taken.

*6-6-12*

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be executed as of the date first written above.

Dated: June 12, 2012

Natalie Marston-Salem

Dated: June 6, 2012

Maurice Marston

6-6-12

Exhibit 1, Page 43

# EXHIBIT B

Exhibit 1, Page 44



Evan C  Borges
Direct Dial: (949) 383-2860
EBorges@GGTrialLaw com

June 28, 2021

**VIA E-MAIL: ron@ronaldrichards.com**

Ronald Richards
Special Counsel to Chapter 7 Trustee, Girardi Keese Estate
Law Offices of Ronald Richards & Associates, A.P.C.
P.O. Box 11480
Beverly Hills, CA 90213

> Re:     **In re Girardi Keese; CACB Case No. 2:20-bk-21022-BR**

Dear Ronald:

This letter sets forth the agreement effective as of June 28, 2021 (the "Agreement") between Elissa D. Miller, in her capacity as chapter 7 trustee for bankruptcy debtor Girardi Keese ("GK") (the Trustee") on the one hand, and party in interest Erika Girardi ("Ms. Girardi") on the other hand, regarding the proceeds of a certain check (the "Check") dated June 9, 2021, bearing check number ▮▮▮▮▮ and received at the offices of GK from the State of California, made payable to Erika N. Girardi, based on a gross amount of $26,000, from which the State of California withheld federal taxes of $6,240.00, resulting in a net payment amount of **$19,760.00** (the "Check Proceeds").

1.      **Endorsement and Deposit of Check By Trustee in Trust Account**.  Ms. Girardi consents to the Trustee endorsing the check with Ms. Girardi's signature "for deposit only" and depositing the check into the trust account of GK, over which the Trustee represents that she has exclusive control.  The Trustee further agrees to hold and segregate the Check Proceeds in the GK trust account, subject to the terms of this Agreement.

2.      **Check Proceeds Retained in Trust Account**.  The Trustee and Ms. Girardi agree that the Check Proceeds shall be held by the Trustee in the GK trust account and shall not be released or distributed absent (a) a further written agreement signed by the Trustee and Ms. Girardi, or (b) a binding and final court order.

3.      **Mutual Reservation of Rights**.  The Trustee and Ms. Girardi reserve all rights and claims as to entitlement to the Check Proceeds and the subject matter of this Agreement.

650 Town Center Drive, Suite 1700 | Costa Mesa, California 92626 | Phone (949) 383-2800 | Fax (949) 383-2801 | www.GGTrialLaw.org

Exhibit 1  Page 45

**GREENBERG GROSS LLP**

Ronald Richards
June 28, 2021
Page 2

4.  **Mutual Cooperation**.  The Trustee and Ms. Girardi agree to cooperate with one another in exchanging information relevant to resolution of entitlement to the Check Proceeds and the subject matter of this Agreement.

5.  **Miscellaneous**.  This Agreement contains the entire agreement between the parties regarding the subject matter hereof.  This Agreement may not be modified or amended verbally, and only may be modified or by a writing signed by both of the parties hereto.  This Agreement may be signed in counterpart copies by pdf electronic signatures of the parties, which shall be deemed original signatures, and which together shall constitute the fully executed Agreement.

By their signatures below, the Trustee and Ms. Girardi agree to this Agreement.

Very truly yours,

Evan C. Borges

IT IS SO AGREED.

By: _____
    Elissa D. Miller, in her capacity as chapter 7 trustee
    for bankruptcy debtor Girardi Keese

By: _____
    Erika Girardi

ECB:CW

Exhibit 1, Page 46

GREENBERG GROSS LLP

Ronald Richards
June 28, 2021
Page 2

4.      **Mutual Cooperation**.  The Trustee and Ms. Girardi agree to cooperate with one another in exchanging information relevant to resolution of entitlement to the Check Proceeds and the subject matter of this Agreement.

5.      **Miscellaneous**.  This Agreement contains the entire agreement between the parties regarding the subject matter hereof.  This Agreement may not be modified or amended verbally, and only may be modified or by a writing signed by both of the parties hereto.  This Agreement may be signed in counterpart copies by pdf electronic signatures of the parties, which shall be deemed original signatures, and which together shall constitute the fully executed Agreement.

By their signatures below, the Trustee and Ms. Girardi agree to this Agreement.

Very truly yours,

Evan C. Borges

IT IS SO AGREED.

By: _____
Elissa D. Miller, in her capacity as chapter 7 trustee
for bankruptcy debtor Girardi Keese

By: _____
Erika Girardi

ECB:CW

Exhibit 1, Page 47

# EXHIBIT C

Exhibit 1, Page 48

LAW OFFICES OF

# **R**onald **R**ichards and **A**ssociates

**A Professional Corporation**
**310-556-1001 Los Angeles Office**
**202-508-1060 DC Office**

Office Locations:

Richards Law Building
West Hollywood, CA

CA Mailing Address:
PO Box 11480
Beverly Hills, CA 90213

DC Office Address:
1629 K ST. Suite 300
Washington D.C., 20006

**\*Admitted in the following**
**Courts:\***
All Fed. and State Cts. in
California, 2nd, 9th & 11th Circuit,
C.O.A's, ED of Michigan, D of
Colorado, W.D. of Tenn., District
of Columbia D.C.,
The United States Supreme Court
(U.S.S.C.)
**Bar Membership:**
California
District of Columbia

EMAIL: RON@RONALDRICHARDS.COM
WEBSITE: WWW.RONALDRICHARDS.COM

June 10, 2021

Mr. Peter Mastan
Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071

Dear Mr. Mastan,

## **DEMAND FOR REIMBURSEMENT AND ASSIGNMENT OF LOTTERY PAYMENTS**

As you are aware, our office is Special Counsel to Elissa D. Miller, Trustee of the Girardi Keese Chapter 7 Estate.

I am attaching for your review a lottery payee set up dated 6/26/2012, made payable to your client, Erika Nay Girardi. A stipulation and court order for disbursement of Girardi Keese Attorneys Fees. A settlement agreement for attorneys' fees for Girardi Keese. Finally, a disbursement letter from Girardi Keese signed by ███████.

We would like to have the remaining payments assigned to the Estate immediately. We would also like to have the Estate reimbursed for the payments received since June of 2012 to the present.

Based on the attached evidence, we are demanding an execution of a new lottery payee form to Elissa D. Miller, Chapter 7 Trustee, for the Girardi Keese estate, as well as a wire of the proceeds that have been previously tendered, to the attached bank account for the Trustee.

1

Here is the breakdown as we see it:

$34,658.00 paid in 2012.
$208,000.00 for years 2013 to 2021
$78,000 for the years, 2022 to 2025.

Please feel free to call me to discuss this matter.   This demand will expire within ten days from today's date before we take further steps to recover these funds for the Estate and prevent further dissipation of Estate assets.

Sincerely,

Ronald Richards, Esq.

2



## CALIFORNIA LOTTERY
## PAYEE SETUP

Please complete, sign, obtain notarization, and return this form to the following address:

**California Lottery**
**Attn: Investments Section**
**700 North 10th Street**
**Sacramento, CA 95811**

The following information is required to properly set up your file, and will determine the appropriate tax withholding rate. Please see information about Federal Tax Reporting below.

### PLEASE PRINT IN INK OR TYPE

| NAME (FIRST, MIDDLE, LAST) | HOME TELEPHONE NO. | WORK TELEPHONE NO. |
|---|---|---|
| ERIKA NAY GIRARDI | ▮▮▮ | ▮▮▮ |

| MAILING ADDRESS (STREET, RURAL ROUTE, OR PO BOX) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1126 Wilshire Boulevard | Los Angeles | CA | 90017 |

| COUNTRY (if not USA) | SOCIAL SECURITY/TAX ID NO. | DATE OF BIRTH | DRAW DATE |
|---|---|---|---|
| | ▮▮▮ | ▮▮▮ | 6▮▮9 |

ARE YOU A U.S. CITIZEN? [X] YES [ ] NO   IF NOT A U.S. CITIZEN, YOUR RESIDENT STATUS [ ] Resident [ ] Non-Resident

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| SIGNATURE | DATE |
|---|---|
| *(signature)* | 6/26/12 |

### NOTARY PUBLIC ACKNOWLEDGMENT

State of ___California___   County of ___Los Angeles___

On ___June 26, 2012___ before me, ___Shirleen H. Fujimoto, Notary Public___ personally appeared ___Erika Girardi___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*(signature) Shirleen H. Fujimoto*

> **SHIRLEEN H. FUJIMOTO**
> COMMISSION # 1933089
> Notary Public - California
> LOS ANGELES COUNTY
> My Comm. Expires May 15, 2015
> (seal)

**INFORMATION ABOUT FEDERAL TAX REPORTING:** The California Lottery (Lottery) is required by Internal Revenue Code Treasury Regulations, § 31.3402(a)-1 to withhold income on the proceeds of a single wager which exceeds $5,000. The withholding rate for income tax depends on your personal resident status. The Lottery is currently required to withhold federal taxes at the rate of 25% for a U.S. citizen and resident aliens; 30% for non-resident aliens, and 28% for U.S. citizens and resident aliens who do not have a Social Security Number.

**PRIVACY NOTICE:** The State Information Practices Act of 1977 (Civil Code § 1798.17) and the Federal Privacy Act (Public Law 93-579) require that this notice be provided when the Lottery collects personal information from individuals. Social Security numbers and birth dates are used for identification purposes only, except as required by state and federal law. Providing the requested information will prevent delays in receipt of annual prize payments.

The information you provide may be disclosed to state and federal government agencies including, but not limited to: the State Controller's Office, State Franchise Tax Board, Department of Health Services, and the Federal Internal Revenue Service.

You have the right to access your personal information maintained by the Lottery by contacting the California Lottery, 700 North 10th Street, Sacramento, CA 95811, Attention: Public Records Act Coordinator.

CSL 1270 (R06/11)                    Event No. TV ▮▮▮                    1, Page 51   1476



# GIRARDI | KEESE
### LAWYERS

August 2, 2012

**SENT VIA U.S. PRIORITY MAIL**

MR. MAURICE MARSTON
8780 19th Street - #460
Alta Loma CA 91701

    Re:    **Marston v. Marston**

Dear Maurice:

    I am enclosing herewith a copy of the **STIPULATION AND ORDER AUTHORIZING CALIFORNIA LOTTERY TO DISBURSE LOTTERY WINNINGS AND FINAL DISMISSAL OF ACTION ("ORDER")** as signed by the Honorable Joseph Brisco on August 2, 2012.

    As you will note from this ORDER, you will receive payments from the California Lottery, pursuant to Paragraph 2, for the next twelve (12) years or for calendar years 2013 – 2025.   You will receive within sixty (60) days the payment set forth in paragraph 1 of this ORDER.   Please keep the enclosed ORDER in a safe place for future reference. It is on file with the State Lottery Commission.

    If there is a change in the address as set forth in the Payee Setup Form which you previously executed, you must so notify the State Lottery for receipt of future payments.

            Very truly yours,

          **GIRARDI | KEESE**


L/ata
Enclosure

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554

# EXHIBIT D

LAW OFFICES OF

# **Ronald Richards and Associates**

**A Professional Corporation**
**310-556-1001 Los Angeles Office**
**202-508-1060 DC Office**

Office Locations:

**\*Admitted in the following Courts:\***
All Fed. and State Cts. in California, 2nd, 9th & 11th Circuit, C.O.A's, ED of Michigan, D of Colorado, W.D. of Tenn., District of Columbia D.C.,
The United States Supreme Court (U.S.S.C.)
**Bar Membership:**
California
District of Columbia

Richards Law Building
West Hollywood, CA

CA Mailing Address:
PO Box 11480
Beverly Hills, CA  90213

DC Office Address:
1629 K ST. Suite 300
Washington D.C., 20006

EMAIL: RON@RONALDRICHARDS.COM
WEBSITE: WWW.RONALDRICHARDS.COM

August 18, 2021

Evan C. Borges, Esq.
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626

## **VIA EMAIL PDF:  EBorges**

Dear Mr. Borges,

As you know, our office is Special Counsel to the Trustee Elissa Miller for the Girardi Keese Chapter 7 Bankruptcy Estate.

Please consider this a formal demand for payment of the receivable in favor of Girardi Keese against EJ Global, LLC and Erika Girardi in the amount of $25,592,261.26 plus $2,559,226.10 in interest through June 2021.  The open book account has been entered and maintained each year since 2008.  The last entry was in June of 2020.  Interest is accruing at 10% per year.

I have attached a breakdown of the figure to the penny.  These charges were all for the benefit of Erika Girardi and EJ Global, LLC, which was 100% owned by Erika Girardi. These charges were made by Erika Girardi and were exclusively for her benefit.  Her LLC was filed on her personal return for many years as a Schedule C since she was the sole owner.  Mrs. Girardi signed under penalty of perjury the return and personally approved the charges allocated to the breakdown.

For the sake of this letter, we are presuming that Mrs. Girardi accurately represented her receivable to the Internal Revenue Service. We are also presuming that all of the charges on her personally assigned American Express Card and other personal Erika Jayne aka Erika Girardi vendors were exclusively for her benefit.

We are reserving all rights to add additional common counts or claims and this letter should not be construed as a limitation of any those rights.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Ronald Richards, Esq.
Special Counsel

2

Exhibit 1, Page 55

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---|
| AMERICAN EXPRESS | $14,259,012.84 |
| McDONALD SELZNICK ASSOC., INC. | 1,532,774.88 |
| UNKNOWN | 1,417,587.50 |
| PARADIGM MANAGEMENT LLC | 1,260,000.00 |
| KIDSQUARED, INC. | 863,880.93 |
| CAK ENTERTAINMENT, INC. | 450,000.00 |
| GREENBERG TRAURIG LLP | 260,000.00 |
| TROY JENSEN INC | 252,100.00 |
| SANRE' ENTERTAINMENT | 220,000.00 |
| CITRUSONIC, LLC | 205,838.54 |
| BLOC TALENT AGENCY, INC. | 171,991.50 |
| THE DANICA GROUP LLC | 170,108.71 |
| DNA INC. | 156,600.00 |
| JEREMY SULLIVAN | 150,000.00 |
| AWESTRUCK PRODUCTIONS, INC. | 142,800.00 |
| JASMINE VEGA | 137,896.67 |
| MARCO BOLLINGER PHOTOGRAPHY | 134,264.00 |
| MMA | 133,154.73 |
| CLEAR TALENT GROUP | 130,334.93 |
| REGINAL A. MATHIS LLC | 125,000.00 |
| PRESTON MENESES | 114,500.00 |
| IMMACULATE ASSISTANCE AGENCY | 108,373.91 |
| STEPHANIE SHEPHERD | 102,596.77 |
| GERALD HELLER | 100,000.00 |
| CLOUTIER-REMIX | 98,012.37 |
| HOT ROLLER INC. | 97,683.80 |
| HOCHMAN SALKIN ROSCHER PEREZ P.C. | 94,111.77 |
| JON KOOREN | 88,934.00 |
| GARY BALLEN | 88,808.68 |
| ORLANDO PUERTA | 88,000.00 |
| MMK MANAGEMENT | 80,939.41 |
| RICHARD LEHER | 80,000.00 |
| TMG INTERNATIONAL | 80,000.00 |
| MICHAEL NUNEZ | 76,818.40 |
| BOBBY SHAW PROMOTIONS | 76,000.00 |
| FRANCESCO GALASSO | 75,681.00 |
| CENTERSTAGING MUSICAL PROD INC | 75,144.98 |
| ROGERS & COWEN | 69,274.89 |
| MISSSHIU INC | 66,875.00 |
| ARCHER PRODUCTIONS LLC | 65,628.21 |
| LEVINE COMMUNICATIONS OFFICE | 62,475.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| MATTHIAS HEIDEMANNS | 60,000.00 |
| PHILIP SANDHAUS | 60,000.00 |
| ELIAS TAHAN | 59,950.00 |
| OUTBOUND INC. | 59,100.00 |
| KIMBERLY C. KYEES | 58,875.00 |
| MVA PUBLIC RELATIONS GROUP | 55,000.00 |
| MILES HIGH PRODUCTIONS | 51,486.84 |
| APOLLO JETS | 45,161.69 |
| JAREK RIEWER | 44,200.00 |
| THE HUNGRY CREATIVE AGENCY LLC | 43,447.00 |
| MITCH SCHNEIDER ORGANIZATION | 42,717.12 |
| CHUCK OLINER | 41,665.00 |
| THERESE WILLIS | 37,017.50 |
| MICHAEL GATSWIRTH | 36,000.00 |
| RAFELSON MEDIA CONSULTING INC. | 34,300.00 |
| GO 2 TALENT AGENCY INC | 30,786.14 |
| MICHAEL GRUBER | 30,000.00 |
| BRYAN CROSS, LLC | 29,705.29 |
| SCOTT BARNES | 28,300.00 |
| PRISCILLA RANGEL | 28,282.40 |
| 1645 N. VINE ST. 705, LLC | 27,980.00 |
| GUI SCHOEDLER | 21,600.00 |
| MONGOOSE ATLANTIC, INC. | 21,140.00 |
| JULIANA Z. INC. | 19,500.00 |
| JOHN RITTENOUR | 18,000.00 |
| LORENZO CALDERON | 17,532.00 |
| COLBY COLON | 17,500.00 |
| OPUS BEAUTY | 17,415.00 |
| ANDREW DIPALMA | 17,000.00 |
| BRITTEN PARK | 16,400.00 |
| MARCO BOLLINGER | 16,350.00 |
| MELROSE STUDIOS, INC | 15,156.01 |
| JOSEPH FISHER | 15,000.00 |
| MATT WATERHOUSE | 15,000.00 |
| MICHAEL SCHMIDT STUDIOS INC. | 14,530.00 |
| LAURENTIUS PURNAMA | 14,469.00 |
| THE HOLLYWOOD REPORTER | 13,360.00 |
| BLOCNYC | 12,970.00 |
| KATIE BERENSON | 12,502.79 |
| MARTIN MILLIGAN | 11,887.75 |
| LEE DAGGER | 10,500.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---|
| MARC JACKSON BURROWS | 10,500.00 |
| LOS ANGELES TIMES MAGAZINE | 10,400.00 |
| ESCAPE PRODUCTIONS INC. | 10,000.00 |
| VIDEO STATIC | 10,000.00 |
| POLITO EPPICH ASSOCIATES LLP | 9,700.00 |
| CoCo de Mer | 9,029.52 |
| ISABEL PEREZ | 9,000.00 |
| E5 GLOBAL MEDIA LLC | 8,480.00 |
| BLAH BLAH MUSIC LTD. | 8,223.92 |
| WOODMAR INC | 7,527.54 |
| RALPHI ROSARIO INC. | 7,000.00 |
| JACOB R. ARCHER | 6,775.00 |
| BERNIE GRUNDMAN MASTERING | 6,700.78 |
| EN ROUTE TRAVEL | 6,191.80 |
| BOB GAIL ENTERPRISES,INC | 6,045.58 |
| HECTOR FONSECA | 6,000.00 |
| KGS STUDIOS LTD | 6,000.00 |
| L.A. MODELS | 6,000.00 |
| TYPRODUCTIONS | 6,000.00 |
| CHRIS ALBA | 5,500.00 |
| EXTREMEDYS HAND & FOOT SPA | 5,160.00 |
| MARCO MARCO | 5,030.00 |
| AMPLE ENTERTAINMENT, INC | 5,000.00 |
| JODY DEN BROEDER | 5,000.00 |
| JOHN RUSSO PHOTOGRAPHY | 5,000.00 |
| JOY FERNBACH HARN | 5,000.00 |
| MAMS TAYLOR | 5,000.00 |
| MIXMASTERED RECORDS | 5,000.00 |
| THREE SIX ZERO GROUP | 5,000.00 |
| HSMPR | 4,800.00 |
| KATHERINE DELANY | 4,675.00 |
| THE LOOK PARTNERSHIP LLC | 4,500.00 |
| NAILS BY SARAH B | 4,444.79 |
| BRANDON SHOWERS PHOTOGRAPHY | 4,052.00 |
| HITS MAGAZINE, INC. | 4,000.00 |
| MDM ARTISTS, INC. | 4,000.00 |
| UNDOCUMENTED MANAGEMENT | 4,000.00 |
| WIZARDZ OF OZ | 3,900.00 |
| COLIN YEO | 3,800.00 |
| THE BASEMENT DANCE CENTER | 3,575.00 |
| SIMON THIRLAWAY INC. | 3,500.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---|
| PREMIERE VALET SERVICE | 3,330.00 |
| PETER GALVIN PRODUCTIONS | 3,288.91 |
| FRANCHISE TAX BOARD | 3,256.96 |
| GORDON LAKE | 3,200.00 |
| POWER PROMOTIONS | 3,187.30 |
| DUN & COMPANY | 3,072.10 |
| BILL HAMEL, INC. | 3,000.00 |
| CHRIS BREDESEN | 3,000.00 |
| COTTON GRAPHIC DESIGN | 3,000.00 |
| DJ LYNWOOD GROUP OF COMPANIES | 3,000.00 |
| RICHIE PANGILINAN | 3,000.00 |
| SAMUEL PISENO | 3,000.00 |
| TARA, INC. | 3,000.00 |
| TKC ENTERTAINMENT | 3,000.00 |
| TOO BOB FOR YOUR MOM | 3,000.00 |
| TRENDSETTER MEDIA & MARKETING | 3,000.00 |
| VINCENT PASSERI | 3,000.00 |
| WILLIAM CLARK | 3,000.00 |
| KIMBLE HAIR STUDIO | 2,980.29 |
| QBT MEDIA COMPANY | 2,980.19 |
| LIGHTENUP, INC. | 2,925.00 |
| JASON LEDER | 2,825.00 |
| CHRISTINE D'ANGELO | 2,646.12 |
| SOUNDCHECK LA, LLC | 2,571.00 |
| GUY FURIOUS PRODUCTIONS | 2,500.00 |
| ODYSSEY MAGAZINE | 2,500.00 |
| SACHA COLLISSON | 2,500.00 |
| ARNE KNUDSEN | 2,431.66 |
| ANTHONY SPENCER | 2,275.00 |
| KIMMIE K | 2,250.00 |
| ELECTRO LIGHTING, LLC | 2,200.00 |
| KIM KIMBLE | 2,100.00 |
| STAGE THIS | 2,020.00 |
| WARREN CONFECTIONS CORP. | 2,006.58 |
| HED PRODUCTIONS | 2,000.00 |
| SURFER ROSA RECORDS | 2,000.00 |
| SEAN KAYSEN | 1,950.00 |
| GRID AGENCY, INC. | 1,800.00 |
| KENNETH WORMALD | 1,800.00 |
| SETOLOGY | 1,800.00 |
| BRINN BIERMAN | 1,700.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---|
| CANDICE CRAIG | 1,700.00 |
| ERIN HERNANDEZ | 1,700.00 |
| JAMIE RUIZ | 1,700.00 |
| HONEYGUN LABS LLC | 1,500.00 |
| MICHAEL CARR | 1,500.00 |
| ONE STOP DIGITAL, INC. | 1,500.00 |
| PICNIC | 1,500.00 |
| SUSANNE BARTSCH | 1,500.00 |
| STEELE VFS, INC. | 1,435.00 |
| FRANK GALASSO | 1,400.00 |
| HEATHER HANES | 1,250.00 |
| ROBERT HOFFMAN | 1,250.00 |
| STARWORKS ARTISTS, LLC | 1,200.00 |
| NIGHTS OF NEON, INC | 1,190.83 |
| KIMBERLY McALLISTER | 1,150.00 |
| AMPED UP, LLC | 1,121.00 |
| JEREMIAH PITMAN | 1,100.00 |
| MARIO DEDIVANOVIC | 1,000.00 |
| MICHAEL DES BARRES | 1,000.00 |
| QUYNH STANLEY | 1,000.00 |
| JASON WAWRO | 950.00 |
| GROVEMASTERING | 875.00 |
| CUSTOM LIGHTING | 850.00 |
| PATRICIA WILLIAMS | 800.00 |
| CAPRICE | 775.00 |
| JOSEPH CORRIGAN | 750.00 |
| PURE MANAGEMENT NYC, LLC | 720.00 |
| JIMMY'S PERMIT SERVICE | 684.00 |
| DICK SMART | 666.67 |
| PHIL LUJAN | 645.83 |
| AXION BUSINESS GROUP | 630.63 |
| BRANDON NIZNIK | 600.00 |
| CRAIG STULL | 600.00 |
| LISA MITCHELL METHOD, INC | 600.00 |
| ANDREW R. POLAND | 550.00 |
| DERRICK ARMAND | 550.00 |
| IRA BOYD | 550.00 |
| JOSHUA LINKEY | 550.00 |
| STEVE FRANCIS | 550.00 |
| SIGN CENTRAL | 533.88 |
| DYLAN ZWICKER | 525.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---:|
| JEFF WESSELS | 525.00 |
| ROBERT DOWLING | 525.00 |
| VICTOR G. MAJOR | 525.00 |
| ERNEST WALTON | 500.00 |
| JARMAN, INC. | 500.00 |
| KATHERINE BORMAN | 500.00 |
| LEO ABRAHAM | 500.00 |
| MATES, INC. | 450.00 |
| DAVID BALLEN | 400.00 |
| LOS ANGELES COUNTY FIRE DEPT. | 386.37 |
| SO CAL SANITATION | 380.00 |
| SEAN SPILLANE | 340.00 |
| CHAD MICHAEL MORISETTE | 305.00 |
| DAVONEE SOU | 300.00 |
| OCTAVIO SANCHEZ | 300.00 |
| SHAMEL PUBLICATIONS, INC. | 300.00 |
| BRENDAN CRAIGHILL | 250.00 |
| DEANNA DELLACIOPPA | 250.00 |
| KAREN BLAKEMAN | 250.00 |
| BUSINESS FILINGS DIVISION | 239.00 |
| CHAD MICHAEL | 225.00 |
| ANTHONY ORTIZ | 200.00 |
| MICHAEL J. COHEN | 200.00 |
| ANNUAL FILING DIVISION | 195.00 |
| ANA RUTH SANTIZO | 120.00 |
| BUNKER PRINTING | 100.00 |
| LOS ANGELES TIMES | 100.00 |
| OFFICE OF FINANCE, CITY OF LA | 80.06 |
| SECRETARY OF STATE | 66.00 |
| Total | $25,592,261.26 |

# EXHIBIT E

Case 2:20-bk-21020-BR Doc 701 Filed 08/16/24 Entered 08/16/24 15:26... Desc
Main Document Page 68 of 82

| SCHEDULE C | **Profit or Loss From Business** | OMB No. 1545-0074 |
|---|---|---|
| (Form 1040) | (Sole Proprietorship) | **2018** |
| Department of the Treasury Internal Revenue Service (99) | ► Go to *www.irs.gov/ScheduleC* for instructions and the latest information. ► **Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065.** | Attachment Sequence No. 09 |

| Name of proprietor | Social security number (SSN) |
|---|---|
| ERIKA N. GIRARDI | |

**A** Principal business or profession, including product or service (see instructions)
PERFORMER

**B** Enter code from Instructions ►

**C** Business name. If no separate business name, leave blank.
EJ GLOBAL LLC

**D** Employer ID number (EIN) (see instr.)

**E** Business address (including suite or room no.) ►
City, town or post office, state, and ZIP code

**F** Accounting method: **(1)** [X] Cash **(2)** [ ] Accrual **(3)** [ ] Other (specify) ►

**G** Did you 'materially participate' in the operation of this business during 2018? If 'No,' see instructions for limit on losses ... [X] Yes [ ] No

**H** If you started or acquired this business during 2018, check here ... ► [ ]

**I** Did you make any payments in 2018 that would require you to file Form(s) 1099? (see instructions) ... [ ] Yes [X] No

**J** If 'Yes,' did you or will you file required Forms 1099? ... [ ] Yes [ ] No

### Part I  Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the 'Statutory employee' box on that form was checked ... ► [ ] | 1 | 1,063,572. |
| 2 | Returns and allowances. | 2 | |
| 3 | Subtract line 2 from line 1. | 3 | 1,063,572. |
| 4 | Cost of goods sold (from line 42). | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3. | 5 | 1,063,572. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions). | 6 | |
| 7 | **Gross income.** Add lines 5 and 6. ► | 7 | 1,063,572. |

### Part II  Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | 175. | 18 Office expense (see instructions) | 18 | |
| 9 | Car and truck expenses (see instructions) | 9 | | 19 Pension and profit-sharing plans | 19 | |
| 10 | Commissions and fees | 10 | | 20 Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | 11 | | **a** Vehicles, machinery, and equipment | 20a | |
| 12 | Depletion | 12 | | **b** Other business property | 20b | 37,289. |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) | 13 | | 21 Repairs and maintenance | 21 | |
| | | | | 22 Supplies (not included in Part III) | 22 | 3,647. |
| | | | | 23 Taxes and licenses | 23 | 17,748. |
| 14 | Employee benefit programs (other than on line 19) | 14 | | 24 Travel and meals: | | |
| | | | | **a** Travel | 24a | 534,512. |
| 15 | Insurance (other than health) | 15 | | **b** Deductible meals (see instructions) | 24b | 3,489. |
| 16 | Interest (see instr.): | | | 25 Utilities | 25 | |
| **a** | Mortgage (paid to banks, etc.) | 16a | | 26 Wages (less employment credits) | 26 | |
| **b** | Other | 16b | | 27a Other expenses (from line 48) | 27a | 2,127,004. |
| 17 | Legal and professional services | 17 | | **b** Reserved for future use | 27b | |
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a ... ► | | | | 28 | 2,723,864. |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7. | | | | 29 | -1,660,292. |

30 Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions).
Simplified method filers only: enter the total square footage of: (a) your home: _____
and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 ...

| | 30 | |
|---|---|---|

31 **Net profit or (loss).** Subtract line 30 from line 29.
● If a profit, enter on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.**
● If a loss, you **must** go to line 32.

| | 31 | -1,660,292. |
|---|---|---|

32 If you have a loss, check the box that describes your investment in this activity (see instructions).
● If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.**
● If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited.

**32a** [X] All investment is at risk.
**32b** [ ] Some investment is not at risk.

**BAA  For Paperwork Reduction Act Notice, see the separate instructions.**     FDIZ0112L 09/24/18     Schedule C (Form 1040) 2018

Exhibit 1, Page 63

Case 2:20-ap-01035-BR Doc 701 Filed 08/16/24 Entered 08/16/24 16:38:17 Desc
Main Document Page 69 of 82

Schedule C (Form 1040) 2018  ERIKA N. GIRARDI                                                    Page 2

| Part III | Cost of Goods Sold (see instructions) | | |
|---|---|---|---|

**33** Method(s) used to value closing inventory: **a** ☐ Cost **b** ☐ Lower of cost or market **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If 'Yes,' attach explanation.......................................................................... ☐ Yes ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation............................................ | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use........................ | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself...................... | **37** | |
| **38** | Materials and supplies....................................................... | **38** | |
| **39** | Other costs................................................................ | **39** | |
| **40** | Add lines 35 through 39.................................................... | **40** | |
| **41** | Inventory at end of year.................................................... | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4............ | **42** | |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year)  ► _____

**44** Of the total number of miles you drove your vehicle during 2018, enter the number of miles you used your vehicle for:

**a** Business _____  **b** Commuting (see instructions) _____  **c** Other _____

**45** Was your vehicle available for personal use during off-duty hours?................................. ☐ Yes ☐ No

**46** Do you (or your spouse) have another vehicle available for personal use?........................... ☐ Yes ☐ No

**47a** Do you have evidence to support your deduction?................................................ ☐ Yes ☐ No

**b** If 'Yes,' is the evidence written?.............................................................. ☐ Yes ☐ No

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. |
|---|---|

SEE STATEMENT 8

| | |
|---|---|
| **48 Total other expenses.** Enter here and on line 27a.......................................... **48** | 2,127,004. |

Schedule C (Form 1040) 2018

FDIZ0112L  07/16/18

Exhibit 1, Page 64

| 2018 | FEDERAL STATEMENTS | PAGE 3 |
|---|---|---|

| CLIENT GIRATHO | THOMAS V. AND ERIKA N. GIRARDI | |
|---|---|---|
| 10/11/19 | | 01:41PM |

### STATEMENT 7

### STATEMENT 8 - PERFORMER
### SCHEDULE C, PART V
### OTHER EXPENSES

| | | |
|---|---|---:|
| AGENT EXPENSE | $ | 61,964. |
| BANK CHARGES | | 103. |
| DESIGN | | 500. |
| MANAGER | | 4,278. |
| MARKETING | | 66,247. |
| PHOTOGRAPHY | | 3,310. |
| POSTAGE | | 1,049. |
| PRODUCTION | | 1,466,197. |
| PROFESSIONAL SERVICES | | 508,448. |
| PROMOTION | | 4,456. |
| SECURITY | | 706. |
| TELEPHONE | | 9,746. |
| TOTAL | $ | 2,127,004. |

### STATEMENT 9

#### RENTAL AND ROYALTY EXPENSES

Exhibit 1. Page 65

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
PO Box 11480
Beverly Hills, CA 90213

A true and correct copy of the foregoing document entitled (*specify*): _____
amended complaint
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 26, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

> X    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> ☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 23, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> ☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| August 26, 2021 | Ronald Richards | /s Ronald Richards |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                              **F 9013-3.1.PROOF.SERVICE**

Exhibit 1, Page 66

**2:21-ap-01155-BR Notice will be electronically mailed to:**

Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
ori@marguliesfaithlaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Evan C Borges on behalf of Defendant EJ Global, LLC, a limited liability company
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Evan C Borges on behalf of Defendant Pretty Mess, Inc., a corporation
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Evan C Borges on behalf of Defendant Erika Girardi
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Craig G Margulies on behalf of Interested Party Courtesy NEF
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Elissa Miller (TR)
CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com

Ronald N Richards on behalf of Plaintiff Elissa Miller
ron@ronaldrichards.com, morani@ronaldrichards.com

Frank X Ruggier on behalf of Interested Party Courtesy NEF
frank@ruggierlaw.com, enotice@pricelawgroup.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy J Yoo on behalf of Interested Party Courtesy NEF
tjy@lnbyb.com

**2:21-ap-01155-BR Notice will not be electronically mailed to:**

Exhibit 1, Page 67

# EXHIBIT 2

EVAN C. BORGES, State Bar No. 128706
  *EBorges@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone:   (949) 383-2800
Facsimile:    (949) 383-2801

Attorneys for Defendants Erika Girardi, EJ
Global, LLC, and Pretty Mess, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| In re Girardi Keese,<br><br>                    Debtor,<br><br>---<br><br>ELISSA D. MILLER, Chapter 7 Trustee,<br><br>                    Plaintiff,<br><br>          v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>                    Defendants. | Case No. 2:25-cv-01038-AH<br><br>**ORDER GRANTING STIPULATION RE FINAL MODIFICATION OF CIVIL PRETRIAL SCHEDULE AND TRIAL ORDER TO EXTEND DEADLINES BY THIRTY-FIVE (35) DAYS   [70]**<br><br>**[Filed Concurrently with Proposed Order]**<br><br>***NOTE CHANGES MADE BY COURT*** |

Exhibit 2, Page 68
Case No. 2:25-cv-01038-AH

ORDER GRANTING STIPULATION RE FINAL MODIFICATION OF CIVIL PRETRIAL SCHEDULE AND
TRIAL ORDER TO EXTEND DEADLINES BY THIRTY-FIVE (35) DAYS

Having read and considered the Parties' *Stipulation Re Final Modification of Civil Pretrial Schedule and Trial Order to Extend Deadlines by Thirty-Five (35) Days* (Dkt. 70), the Court finds there is good cause for the Stipulation and the Stipulation is hereby **GRANTED**.

**IT IS HEREBY ORDERED** that:

1. The deadline for filing the Second Round Pretrial Documents shall be continued, from **February 4, 2026** to **April 15, 2026**.

2. The Final Pretrial Conference and all motions in limine currently set for **February 18, 2026** are hereby continued to **April 29, 2026 at 1:30 p.m**.

3. The Jury Trial shall be continued, from **March 10, 2026** to **May 19, 2026 at 8:30 a.m.**.

4. No further continuances will be requested.

DATED:  FEBRUARY 4, 2026

_____
Hon. Anne Hwang
United States District Judge

# EXHIBIT 3

## ASSET PURCHASE AND SALE AGREEMENT

This Asset Purchase and Sale Agreement (the "***Agreement***") is entered into as of ____ (the "***Effective Date***") among Elissa D. Miller, solely in her capacity as the chapter 7 trustee for the bankruptcy estate ("***Estate")*** of Girardi Keese ("***Seller***"), and LHA Land LLC, a Colorado limited liability company, ("***Buyer***"). Seller and Buyer are sometimes referred to herein individually as a "***Party***" and together as the "***Parties***."

## <u>RECITALS</u>

A. On December 18, 2020, an involuntary chapter 7 bankruptcy petition was filed against the Girardi Keese Law Firm (the "***Debtor***") commencing Case No. 2:20-bk-21022-BR in the U.S. Bankruptcy Court for the Central District of California (the "***Bankruptcy Court***"). The Court entered the Order for Relief on January 13, 2021, and the Trustee was appointed and accepted her appointment.

B. On July 14, 2021, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Erika Girardi, Pretty Mess, Inc., and EJ Global, LLC (collectively, the "***Defendants***"). The case was assigned adversary case number 2:21-ap-01155-BR (the "***Adversary Action***"). The complaint contained claims for declaratory relief, turnover of property of the estate, avoidance and recovery of fraudulent transfers, conversion, constructive trust, account stated, open book account, money had and received, unjust enrichment, and an accounting (collectively with the complaint, the "***Trustee's Claims***"). The Defendants answered the complaint and demanded a jury trial.

C. By order entered on October 23, 2024, the claim related to a pair of diamond earrings was resolved in favor of the Trustee, and the Bankruptcy Court found that the proceeds from the sale of the earrings were property of the Estate (the "Earring Proceeds").

D. By order entered on January 28, 2025, and in part because of the Defendants' demand for a jury trial, the Bankruptcy Court transferred the Adversary Action to the U.S. District Court, Central District of California (the "District Court"), for further proceedings. The District Court assigned it case number 2:25-cv-01038-AH. Discovery is complete and the District Court set pretrial deadlines for April and a jury trial on May 19, 2026, at 8:30 a.m.

E. Buyers believe that the American Express Company established an American Express credit account for GK's managing partner, Thomas Girardi ("Girardi") and under this account issued an American Express card to Girardi and his spouse, Erika Girardi. Buyers further believe that of the moneys sought to be recovered by the Trustee from Erika Girardi, over $14 million is for payments made by GK for charges incurred by Erika Girardi against Thomas Girardi's American Express account. Buyers also believe that in 2016-2017, American Express credited $750,000 against Girardi's account balance for charges Erika made for clothing purchased from a clothing-design company, *Marco Marco*.

F. The Trustee previously brought an action against American Express to recover transfers made by GK to American Express, *Miller v. American Express,* Adv. Case No.: 2:23-ap-01047-BR (***AMEX Adv. Case***"). On June 12, 2024, the Trustee and American

Express entered into a settlement agreement resolving the AMEX Adv Case, which settlement agreement contained mutual general releases and 1542 waivers. [Trustee's Motion to Approve Settlement – ECF Dkt. # 2184] The Court approved the settlement agreement by order dated July 24, 2024. [Bankr. ECF Dkt. # 2200]

       G.      The Parties have negotiated in good faith to reach an agreement for the Seller's sale of the Purchased Assets, as defined below, to the Buyer as more fully set forth below (the "***Transaction***").

**NOW, THEREFORE,** in consideration of the above recitals and the mutual covenants, agreements, representations and warranties hereinafter set forth, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Seller hereby agree as follows:

## ARTICLE 1
## BANKRUPTCY COURT APPROVAL OF THIS AGREEMENT

**1.1.**    **Binding Effect; Entry of Sale Order**. Article 1 and Section 2.2(a) of this Agreement are effective upon the Execution Date. Except for Article 1 and Section 2.2(a), this Agreement will become effective only upon the entry of a Bankruptcy Court order (the "***Sale Order***") approving the sale contemplated by this Agreement (the "***Transaction***"). Buyer and Seller shall be bound to the terms of this Agreement upon entry of the Sale Order by the Bankruptcy Court.

**1.2.**    **Bankruptcy Court Approval**.

     (a)    **Filing of Sale Motion**. Seller and Buyer acknowledge and agree that this Agreement and the Transaction contemplated hereby are subject to the approval and authorization of the Bankruptcy Court.

     (b)    **Obligation to Seek Sale Order**. This Agreement is subject to Seller filing a motion pursuant to 11 U.S.C. § 363 and obtaining the Sale Order from the Bankruptcy Court that: (a) Seller is authorized to transfer and assign to Buyer all interests of the Debtor in the Purchased Assets, described below, on an "as is, where is" basis without any representations or warranties; and (b) the fourteen-day stay provision of Bankruptcy Rule 6004 is waived. Seller and Buyer shall be obligated to consummate the Transaction contemplated hereby even in the event an appeal to the Sale Order is filed unless a stay to implementation of the Sale Order is obtained by the appellant. Seller shall give Buyer reasonable advance written notice of any hearings regarding motions respecting the Sale Order, and Buyer shall have the right to appear and be heard at any such hearings.

**1.3.**    **Seller's Right to Seek Overbids**. Notwithstanding anything to the contrary, Buyer acknowledges that even after execution of this Agreement, Seller is obligated to market the Purchased Assets, as defined below, to third parties and to seek potential bids that are superior to the consideration contained herein. If an auction is conducted and the Seller does not choose Buyer as the successful bidder but instead chooses Buyer as the next highest or otherwise best bid at the conclusion of the auction, Buyer may, at its sole election, become the back-up bidder

for the amount of its highest bid (the "***Back-up Bidder***"). If the successful purchaser fails to close on its purchase of the Purchased Assets, the Back-up Bidder shall be deemed to be the successful purchaser in which case the Seller and the Back-up Bidder can consummate the Transaction contemplated by this Agreement, with the purchase price modified to the amount of the last bid made by the Buyer.

**1.4.** **Cooperation in Bankruptcy Court Matters**. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller or ordered by the Bankruptcy Court to assist in obtaining entry of the Sale Order.

## ARTICLE II
## PURCHASE AND SALE OF THE CLAIMS; PURCHASE PRICE; DEPOSIT

**2.1** **Purchased Assets**. The purchased assets (the "***Purchased Assets***") are comprised of the Trustee's Claims, all documents obtained from parties through discovery in the litigation of the Trustee's Claims, and all other documents that are known to be in the Seller's possession related to the Trustee's Claims save and except documents and information that was provided subject to a confidentiality agreement. Notwithstanding anything to the contrary, neither the Earring Proceeds nor any financial documents produced by E. Girardi pursuant to a nondisclosure agreement entered into in the context of settlement discussions shall be part of this APA.

**2.2** **Experts and Consultants.** The Trustee engaged the services of Development Specialists, Inc., ("***DSI***"), as her accounting-financial experts. DSI has rendered expert reports that have been submitted to the District Court. The reports are subject to the Defendants Motions in Limine to Exclude the Expert Reports from being introduced into evidence. To the extent the expert reports are allowed into evidence, Buyer shall have the right to use such reports as part of the Buyers evidentiary presentation. The Buyer shall be entitled to examine DSI's experts at trial, subject to Buyer entering into a contract for DSI services. The Trustee shall not be liable or responsible for any services rendered to the Buyer by DSI.

**2.3** **Purchase Price/Good Faith Deposit.** The purchase price for the Purchased Assets shall be $2,000,000.00 (the "***Purchase Price***"). The Purchase Price shall be paid as follows:

(a) **Good Faith Deposit**. Concurrent with the execution of this Agreement, Buyer shall deliver to Seller a wire transfer or a cashier's check or money order made payable to the Seller in the amount of $200,000.00 (the "***Deposit***"). The Deposit shall be credited against the Purchase Price at the Closing. The Deposit is non-refundable except on the following conditions: 1) Seller terminates sale agreement for any reason or no reason; 2) the Court does not enter an Order approving the sale; or 3) the Agreement is terminated prior to the filing of the Sale Motion for any reason other than by reason of Buyer's default under this Agreement.

(b) **Balance.** On or before 11:59 a.m. on the Closing Date, Buyer shall pay the balance of the Purchase Price in excess of the Deposit to Seller by cashier's check delivered pursuant to instructions to be provided by the Seller.

**2.4**      **As-Is, Where-Is Purchase**.  The Purchased Assets will be sold, assigned, transferred and conveyed to Buyer on the Closing Date on an "AS IS" and "WHERE IS" basis, with no representations or warranties of any kind other than those specifically set forth below.  However, notwithstanding anything to the contrary, Seller agrees to – and to instruct Seller's attorneys and consultants likewise – to fully cooperate with Buyer as Buyer and its attorneys take over the litigation and enter their appearances.

**2.5**      **Assignment of Claim and Notice of Assignment to the District Court.**  Upon the closing of the sale, the Trustee shall file with the District Court a Notice of Assignment of Claim in the form attached hereto as Exhibit 1.

**ARTICLE III**
**CLOSING**

**3.1**      **Closing Date and Place.**  Each Party will perform all acts required of such Party pursuant to this Agreement to enable the closing to occur within five (5) business days following the entry of the Sale Order by the Bankruptcy Court, at the offices of Seller's counsel, or at such other place and/or on such other date as shall be agreed upon by Buyer and Seller or otherwise ordered by the Bankruptcy Court. As used in this Agreement, "Closing" means the occurrence of each of the events set forth in Section 3.2 hereof, and "Closing Date" means the date upon which the Closing occurs.

**3.2**      **Closing.**  The "*Closing*" means the occurrence of all of the following events, which the Parties will cause to occur concurrently pursuant to this Agreement:

(a)      Seller has delivered to Buyer a certified copy of the Sale Order which has been entered by the Bankruptcy Court.

(b)      Buyer has paid to Seller an amount equal to the balance of the Purchase Price.

(c)      The representations of each Party contained in Article 4 hereof are true and correct at and as of the Closing Date with the same effect as though made at and as of the Closing Date.

(d)      Each Party has duly performed and complied with all agreements, covenants and conditions required by this Agreement to be performed or complied with by such Party.

(e)      The conditions set forth in this Section 3.2 hereof have occurred.

(f)      Neither Party shall have terminated this Agreement pursuant to Section 5.1 hereof.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES**

**4.1** **Seller's Representations and Warranties**. Sellers hereby makes the following representations and warranties ("**Seller's Representations**") to Buyer:

(a) **Legal Capacity of Seller**. Subject to the entry of the Sale Order by the Bankruptcy Court, Seller has the requisite power, authority, and legal capacity to make, execute, enter into, and deliver this Agreement and to perform its obligations under this Agreement.

(b) **No Other Representations**. Seller makes no representation or warranty, express or implied, to Buyer, and hereby disclaim any representation or warranty, express or implied, with respect to the Purchased Assets.

**4.2** **Buyer's Representations and Warranties**. Buyer represents and warrants to Seller, as follows:

(a) **Buyer's Status**. Buyer (i) is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Colorado, and (ii) has all requisite corporate power and authority to execute, deliver, and perform the transactions contemplated hereby.

(b) **Legal Capacity of Buyer.** The execution, delivery, and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby are within the power of Buyer and have been duly authorized by all necessary actions on the part of Buyer. The execution of this Agreement by Buyer constitutes, or will constitute, a legal valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as limited by bankruptcy, insolvency, or other laws of general application relating to or affecting the enforcement of creditors' right generally and general principles of equity.

(c) **Consents.** No consent, approval, authorization or order of, or registration or filing with, or notice to, any court or governmental agency or body having jurisdiction or regulatory authority over Buyer (or any of its properties) is required for (i) Buyer's execution and delivery of this Agreement (and each agreement executed and delivered by it in connection herewith) or (ii) the consummation by Buyer of the transactions contemplated by this Agreement (and each agreement executed and delivered by it in connection herewith) or, to the extent so required, such consent, approval, authorization, order, registration, filing or notice has been obtained, made or given (as applicable) and is still in full force and effect.

(d) **No Injunctive Relief.** To the best of Buyer's knowledge, there is no litigation, suit, action, arbitration, inquiry, investigation or proceeding pending or, to the knowledge of Buyer, threatened, before any court, agency or other governmental body against Buyer (or any corporation or entity affiliated with Buyer) which seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby.

(e) **Terms of Sale; Investigation**. Buyer has made such investigation as it has deemed appropriate in connection with the decision to enter into this Agreement. Buyer has had the opportunity to conduct due diligence with respect to the Purchased

Assets.  Buyer is relying on the results of such investigation and the advice of its own advisors and has not relied upon any statement or representation made by Seller or any agent, attorney, accountant, or affiliate of the Seller, other than the covenants, representations and warranties of Seller set forth in this Agreement.  Buyer acknowledges that EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN THIS AGREEMENT, BUYER WILL ACCEPT THE PURCHASED ASSETS AT THE CLOSING "AS-IS, WHERE-IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND. BUYER HAS NOT  RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY,  ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY,  ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN.

(f)  **Solvency; Availability of Funds.**

(i)  As of the Closing Date and immediately after consummating the Transaction contemplated by this Agreement, Buyer represents, warrants and covenants that it will not (1) be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair value of its assets or because the present fair value of its assets will be less than the amount required to pay its probable liabilities as they become due and payable), (2) have unreasonably small capital with which to engage in the Business, or (3) have incurred or planned to incur debts beyond its ability to repay such debts as they mature.

(ii)  As of the Closing, Buyer will have cash and working capital available that are sufficient to enable Buyer to pay the Purchase Price and any other amounts required hereunder and to consummate the Transaction contemplated hereby. Buyer acknowledges that its obligation to consummate the Agreement and the Transaction contemplated hereby is not subject to any financing contingency.

### ARTICLE V
### TERMINATION

**5.1  Grounds for Termination**.  This Agreement may be terminated upon the occurrence of any of the following events, by:

(a)  Mutual written agreement of the Parties at any time prior to entry of the Sale Order;

(b)  Buyer or Seller, if Buyer is not declared the successful bidder or a successful Back-up Bidder;

(c)  Either Party if the Bankruptcy Court denies approval of the sale motion such that the Sale Order is not entered by the Bankruptcy Court;

(d)     Either Party if there shall be in effect an order of a governmental body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transaction contemplated hereby;

(e)     Buyer, if as of the time of the Closing, any Seller's Representations are materially untrue, unless waived by Buyer;

(f)     Seller, if as of the time of the Closing, any Buyer's Representations are materially untrue, unless waived by Seller;

(g)     Buyer, if Seller fails to satisfy timely any material obligation of Seller pursuant to this Agreement required to be satisfied prior to or at the Closing; and

(h)     Seller, if Buyer fails to satisfy timely any material obligation of Buyer pursuant to this Agreement required to be satisfied prior to or at the Closing.

**5.2     No Obligation to Terminate.**  Except as may be otherwise set forth in this Agreement, no Party having a right to terminate this Agreement pursuant to Section 5.1 will be required to exercise such right or otherwise be prohibited from enforcing this Agreement by reason of having any such unexercised right to terminate this Agreement.

**5.3     Notice of Termination**.  Any Party terminating this Agreement pursuant to Section 5.1 will give immediate notice of such termination to the other Party at the notices address(es) set forth in Section 7.12, specifying in the notice the provision of this Agreement pursuant to which the termination is made.

**5.4     Effect of Exercising Right of Termination**.  With the exception of a termination by the Seller for cause, if this Agreement is terminated as provided herein, (i) each Party will promptly return to the other Party any monies, documents or other property of the other Party in its possession or control received pursuant to or in contemplation of this Agreement, (ii) this Agreement will terminate and be of no further force or effect, and (iii) each Party will have no further obligation or liability to the other by reason of this Agreement.  Nothing in this Section 5.4 shall relieve any Party of any liability for fraud, intentional misrepresentation or willful breach of this Agreement prior to the date of termination.

## ARTICLE VI
## LIMITATION OF LIABILITY

**6.1     No Personal Liability**.  Buyer acknowledges that Seller and her professionals shall have no personal or corporate liability whatsoever in connection with the performance of any obligations of Seller under this Agreement.

**6.2     Limitation of Liability**.  In no event shall any Party be liable to the other for special, indirect, incidental or consequential damages regardless of whether such Party has been advised of the possibility of such damages.

**6.3** **Limitation of Remedy**. Buyer agrees that its sole remedy resulting from any claims arising from this Agreement, including any breach of this Agreement, covenants contained herein, and Seller's representations contained in <u>Section 4.1</u> is a refund of its Deposit, if and only if the Closing has not occurred.

**ARTICLE VII**
**MISCELLANEOUS PROVISIONS**

**7.1** **Taxes Related to the Purchased Assets**. All federal, state, and local sales, transfer, gains, excise, value-added, or other similar taxes arising from the transfer of the Purchased Assets, other than income taxes of Debtors' bankruptcy estates, and all recording and filing fees, that may be imposed by reason of the sale, transfer, assignment and delivery of the Purchased Assets to Buyer, and which are not exempt under applicable law (collectively, "*Transaction Taxes*"), shall be paid by the Buyer. The Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement.

**7.2** **Integration**. This Agreement (including all Schedules and Exhibits) is the sole agreement between the Parties regarding the Transaction. All prior and contemporaneous negotiations and agreements between the Parties, oral or written, regarding the Transaction, are hereby superseded. No Party has the authority to orally modify this Agreement, or to make any oral representation or oral agreement regarding this Agreement or the Transaction.

**7.3** **Amendment, Waiver and Modification**. Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated except by written consent of the Party against which such change, waiver, discharge or termination is sought to be enforced, or by order of the Bankruptcy Court.

**7.4** **Construction**. The Parties acknowledge that each Party was represented by legal counsel (or had the opportunity to be represented by legal counsel) in connection with this Agreement and that each of them and its legal counsel have reviewed and revised this Agreement, or have had an opportunity to do so, and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or any Exhibits or Schedules hereto or thereto.

**7.5** **Captions; Capitalized Terms**. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Capitalized terms used in the Schedules and Exhibits hereto and not otherwise defined therein shall have the meanings ascribed to them in this Agreement.

**7.6** **Further Assurances**. Each Party will promptly execute and deliver all documents and take all actions, including the payment of money, reasonably required to effectuate the Transaction and perform its duties pursuant to this Agreement.

**7.7** **Assignment; Successors; Parties in Interest**. This Agreement shall not be assignable by Buyer without the prior written consent of Seller and an order of the Bankruptcy

Court. Any attempt to assign this Agreement without such consent or order shall be void and of no effect. This Agreement shall inure to the benefit of, and be binding on and enforceable against, each Party and such permitted successors and assigns of the respective Parties, and nothing in this Agreement, express or implied, is intended to confer upon any employee or affiliate of either Party or any other person any rights or remedies of any nature whatsoever under this Agreement.

      **7.8**     **Time is of the Essence**. With respect to all dates and time periods set forth or referred to in this Agreement, time is of the essence, such that each Party will perform all acts required of such Party pursuant to this Agreement by the date or within the time period required pursuant to this Agreement.

      **7.9**     **Business Day**. As used in this Agreement, the term "business day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in the State of California are closed.

      **7.10.**     **Counterparts**. This Agreement may be executed in several counterparts, each of which shall constitute one and the same instrument. This Agreement may be executed by facsimile or electronic signatures, which shall have the same force and effect as original signatures.

      **7.11**     **Governing Law**. This Agreement shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of California, without giving effect to the conflict of laws and rules thereof. Each Party consents to the exclusive jurisdiction of the U.S. Bankruptcy Court for the Central District of California to resolve any disputes arising under this Agreement. THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY SUCH ACTION(S) AND CONFIRM THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. Without limiting any Party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 7.12 of this Agreement. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law

      **7.12**     **Notices**. Any notice by any Party to any other Party pursuant to this Agreement must be made in writing and delivered to the other Party at the address shown below, until written notice of a different address is given by the other Party pursuant to this Section 7.12. Payments to be made pursuant to this Agreement will be deemed made only upon actual receipt. Notices given by personal service will be deemed received upon delivery. Notices given by first class mail, postage prepaid, addressed to the address required by this Section 7.12, will be deemed received three (3) business days following the deposit thereof with the United States Post Office.

Notices given by overnight courier service will be deemed received on the date of delivery confirmed by the courier service. Notices given by electronic facsimile transmission will be deemed received on the date upon which the recipient's facsimile machine confirms electronically the receipt of the notice, provided that a copy of any notice given by facsimile transmission must also be sent to the recipient by first class mail, postage prepaid, addressed to the address required by this Section 7.12. The rejection by a Party of a notice, the refusal by a Party to accept a notice, or the inability of another Party to deliver a notice because of a change of address of a Party of which no notice of change of address is given pursuant to this Agreement, will constitute delivery of the notice. Telephone numbers and e-mail addresses, if listed, are listed for convenience purposes only and not for the purpose of giving notice pursuant to this Agreement.

|  |  |
|---|---|
| To Seller: | Elissa Miller, Chapter 7 Trustee<br>c/o Greenspoon Marder<br>1875 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>Elissa.miller@gmlaw.com |
| With copies to: | Kyra Andrassy<br>Raines Feldman Littrell LLP<br>4675 MacArthur Court, Suite 1550<br>Newport Beach, CA 92660<br>kandrassy@raineslaw.com |
| To Buyer: | LHA Land LLC<br>3720 S. Dahlia St.<br>Denver, CO 80237<br>adambeal@outlook.com |
| With copies to: | Bruce Bernard Bealke<br>Attorney At Law<br>Illinois State Bar No. 6200543<br>77 W. Wacker Dr., Suite 45001<br>Chicago, IL 60601<br>bealkelaw@protonmail.com<br>Mobile (310) 562-6856<br>Fax (312) 741-1010 |

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the Effective Date.


**Buyer**

**LHA Land LLC**

By: _____

Name:  Adam M. Beal

Its:  Member and Manager


**SELLER:**

**ELISSA D, MILLER, solely in her capacity as the chapter 7 trustee for the bankruptcy estate of Girardi Keese**

By: _____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **MOTION TO APPROVE SALE OF ESTATE'S CLAIMS AGAINST ERIKA GIRARDI, PRETTY MESS, INC., AND EJ GLOBAL, LLC PURSUANT TO 11 U.S.C. § 363(B) TO LHA LAND LLC OR THE HIGHEST BIDDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 15, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 15, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 15, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 15, 2026 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Kyra E Andrassy**  kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Rafey Balabanian**  rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- **Michelle Balady**  mb@bedfordlg.com, leo@bedfordlg.com
- **Robert D Bass**  bob.bass47@icloud.com
- **Reem J Bello**  rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Kate Benveniste**  kate.benveniste@gtlaw.com, kharishma.patel@gtlaw.com,kate-benveniste-1498@ecf.pacerpro.com
- **Leslie A Berkoff**  lberkoff@moritthock.com, hmay@moritthock.com
- **Carl Berthold**  cberthold@apjuris.com
- **Ori S Blumenfeld**  ori.blumenfeld@offitkurman.com, liyah.lewis@offitkurman.com;ik-maurice.ibe@offitkurman.com
- **Clifford Bordeaux**  cliff@bordeauxlaw.com, BordeauxLawPC@jubileebk.net
- **Evan C Borges**  eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **William E Brueckner**  wbrueckner@woodsoviatt.com
- **Richard Dennis Buckley**  rbuckley@weintraub.com
- **Steve Burnell**  Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com;sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com;patricia.dillamar@gmlaw.com
- **Glenn Ward Calsada**  glenn@calsadalaw.com, lnw@calsadalaw.com;glenncalsada@gmail.com,lauren@calsadalaw.com
- **Indira J. Cameron-Banks**  indira@cameronbanks.law, tiffany@cameronbankslaw.com
- **Kathryn M.S. Catherwood**  kcatherwood@grsm.com, asoto@grsm.com
- **Michael F Chekian**  mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **Fang Chen**  fang@fangchenlaw.com
- **Marie E Christiansen**  mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- **Baruch C Cohen**  bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Leslie A Cohen**  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
- **Jennifer Witherell Crastz**  jcrastz@hrhlaw.com
- **Ashleigh A Danker**  adanker731@gmail.com
- **Richard T Egger**  richard.egger@bbklaw.com, linda.tapia@bbklaw.com
- **Lei Lei Wang Ekvall - DECEASED -**  lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Richard W Esterkin**  richard.esterkin@morganlewis.com
- **Oscar Estrada**  oestrada@ttc.lacounty.gov
- **Timothy W Evanston**  tevanston@skarzynski.com, dahn@ecf.courtdrive.com
- **Jeremy Faith**  Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- **Robert W Finnerty**  rfinnerty@actslaw.com, fpedro@actslaw.com
- **James J Finsten**  , jimfinsten@hotmail.com
- **James J Finsten**  jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**  alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com,andrea@flpllp.com
- **Michael E Friedman**  MichaelFriedmanLaw@gmail.com
- **Steven R. Friedman**  stevenrfriedman@gmail.com
- **Larry W Gabriel**  lgabrielaw@outlook.com, tinadow17@gmail.com
- **James B Glucksman**  jbg@dhclegal.com
- **Robert P Goe**  rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Eric D Goldberg**  eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Rosendo Gonzalez**    rossgonzalez@gonzalezplc.com, rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- **Andrew Goodman**    agoodman@tullylegal.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**    suzanne.grandt@calbar.ca.gov, jenny.batdorj@calbar.ca.gov;maria.ramiscal@calbar.ca.gov;ryan.sullivan@calbar.ca.gov
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Asa S Hami**    asa.hami@gmlaw.com, ahami@ecf.courtdrive.com;patricia.dillamar@gmlaw.com;pdillamar@ecf.courtdrive.com
- **Brian T Harvey**    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Marshall J Hogan**    mhogan@swlaw.com, fcardenas@swlaw.com
- **Bradford G Hughes**    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- **Sheryl K Ith**    sith@cookseylaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Steven D Jerome**    sjerome@swlaw.com
- **Lillian Jordan**    nefrecipients@donlinrecano.com, RMAPA@DONLINRECANO.COM
- **Alphamorlai Lamine Kebeh**    MKebeh@allenmatkins.com, mdiaz@allenmatkins.com
- **Molly J. Kjartanson**    mkjartanson@swlaw.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Kenneth A Kotarski**    KKOTARSKI@HAMRICKLAW.COM, hmartindale@HAMRICKLAW.COM;pliscano@hamricklaw.com;gknopfler@hamricklaw.com;khearn@hamricklaw.com;secretary2@hamricklaw.com;sjustice@hamricklaw.com;jpoole@hamricklaw.com
- **Lewis R Landau**    Lew@Landaunet.com
- **Janet A Lawson**    jlawsonlawyer@gmail.com, G38570@notify.cincompass.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com
- **Elizabeth A Lombard**    elombard@zwickerpc.com, bknotices@zwickerpc.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Aaron J Malo**    amalo@sheppardmullin.com, hudenka@sheppard.com;mlinker@sheppard.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Craig G Margulies**    craig@marguliesfaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Drew@MarguliesFaithLaw.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Damian J. Martinez**    dmartinez@leechtishman.com, mmocciaro@leechtishman.com
- **Peter J Mastan**    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;wendy.yones@dinsmore.com;travis.terry@dinsmore.com;darla.castellanos@dinsmore.com
- **Edith R. Matthai**    ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;dflowers@hfbllp.com
- **Dennis E McGoldrick**    dmcgoldricklaw@yahoo.com, demcg@demcg.com
- **Brittany Mitchell Michael**    bmichael@pszjlaw.com
- **Elissa Miller (TR)**    millertrustee@gmlaw.com, MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- **Eric A Mitnick**    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- **Byron Z Moldo**    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com,scarson@ecjlaw.com
- **Kevin H Morse**    kmorse@clarkhill.com, kwebster@clarkhill.com,zhoulihan@clarkhill.com,kchiaghana@clarkhill.com
- **Glenn D. Moses**    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;imalcolm@ecf.courtdrive.com;jadelgado@venable.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Gilbert M Nishimura**   gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- **Joshua Nyman**   josh@ramsaurlaw.com, alecia@ramsaurlaw.com
- **Scott Olson**   solson@seyfarth.com, chidocket@seyfarth.com
- **Aram Ordubegian**   ordubegian.aram@arentfox.com
- **Carmela Pagay**   ctp@lnbyg.com
- **Leonard Pena**   lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Matthew D Pham**   mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Christopher L Pitet**   cpitet@apjuris.com, bferik@apjuris.com
- **Christopher E Prince**   cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;porpe@lesnickprince.com
- **Amy Quartarolo**   amy.quartarolo@lw.com, laura.pumerville@lw.com;amy-quartarolo-2972@ecf.pacerpro.com
- **Michael J Quinn**   mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- **Dean G Rallis**   drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com;jevans@ecf.courtdrive.com
- **Brett Ramsaur**   brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Karen Rinehart**   krinehart@omm.com, karen-rinehart-3320@ecf.pacerpro.com
- **Kevin Ronk**   Kevin@portilloronk.com, eService@cym.law,karen@cym.law,jodie@cym.law,aileen@cym.law,sarah@cym.law
- **Frank X Ruggier**   frank@ruggierlaw.com
- **William F Savino**   wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- **Scott A Schiff**   sas@soukup-schiff.com
- **Daren M Schlecter**   daren@schlecterlaw.com, assistant@schlecterlaw.com
- **Michael V Severo**   msevero@mvslaw.com, paralegal@mvslaw.com,frontdesk@mvslaw.com
- **Kenneth John Shaffer**   johnshaffer@quinnemanuel.com
- **Amir Shakoorian**   amir.shakoorian@hklaw.com
- **Summer M Shaw**   ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Zev Shechtman**   Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- **Anastasija Olegovna Snicarenko**   legal@flyxo.com, jennifer@cypressllp.com
- **Michael G Spector**   mgspector@aol.com, mgslawoffice@aol.com
- **James Stang**   jstang@pszjlaw.com
- **Howard Steinberg**   steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Richard M Steingard**   , awong@steingardlaw.com
- **Andrew Still**   astill@swlaw.com, kcollins@swlaw.com
- **Annie Y Stoops**   annie.stoops@afslaw.com, yvonne.li@afslaw.com
- **Philip E Strok**   pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeffrey L Sumpter**   jsumpter1@cox.net
- **Terrence Swinson**   terrenceswinson@gmail.com
- **Tamar Terzian**   tamar@terzlaw.com, tkouyoum@gmail.com
- **Boris Treyzon**   btreyzon@actslaw.com, pjs@actslaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Diane C Weil**   dcweil@dcweillaw.com, diane.c.weil@Gmail.com,dweil@ecf.inforuptcy.com;jfiser@dcweillaw.com
- **David R. Weinstein**   dweinstein@weinsteinlawfirm.net
- **Andrew D. Weiss**   ADWeiss@oclawadw.com
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law
- **Pauline White**    pauline@paulinewhite.com
- **Eric D Winston**    ericwinston@quinnemanuel.com
- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@afslaw.com;catherine.dark@afslaw.com
- **Robert M Yaspan - SUSPENDED BK -**    court@yaspanlaw.com, tmenachian@yaspanlaw.com
- **Timothy J Yoo**    TJY@LNBYG.COM
- **David B Zolkin**    dzolkin@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com

## 2. SERVED BY UNITED STATES MAIL:

*Secured Creditors*

CORPORATION SERVICE COMPANY
801 Adlai Stevenson Dr
Springfield IL 62703-4261

IKON FINANCIAL SERVICES
1738 Bass Road
Macon GA 31210-1043

LAW FINANCE GROUP, LLC
591 Redwood Hwy, Suite 1200
Mill Valley CA 94941

LFG SPECIAL INVESTOR GROUP, LLC
Series Law Finance Group Fund III
200 South Virginia Street, 8TH Fl
Reno NV 89501

TSO LFG HOLDCO LLP
65 East 55TH Street, 27TH Floor
New York NY 10022

**Request for Special Notice**
Henry Andrew Perez Belanour
7027 W. Broward Blvd. PMB 201
Plantation, FL 33317

## 3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:

### *VIA EMAIL*

*Secured Creditors*

KCC CLASS ACTION SERVICE LLC
C/O VEDDER PRICE, P.C.
275 BATTERY STREET
SAN FRANCISCO CA 94111
DAVID L. KANE Dkane@Vedderprice.com
MICHAEL J. QUINN Mquinn@Vedderprice.com (RSN)
MARIE CHRISTIANSEN Mchristiansen@Vedderprice.com (RSN)

NANO BANC
25220 Hancock Avenue, Suite 140
Murrieta CA 95262
Attorneys for Nano Bank:crat
Jeffrey M. Schwartz jschwartz@muchlaw.com

## Request for Special Notice

Chester A. Thompson III, CEO
CT3Media, Inc.
26080 Shadow Rock Lane
Valencia, CA 91381
Email: chet@ct3media.com

Eric Bryan Seuthe, Esq.
LAW OFFICES OF ERIC BRYAN
SEUTHE & ASSOCIATES
10990 Wilshire Blvd, Suite 1420
Los Angeles, California 90024
Email: EBSeuthe@sbcglobal.net

Gilbert M. Nishimura
600 Wilshire Blvd., Suite 1250
Los Angeles CA 91740
Email: gnishimura@snw-law.com

Wells Fargo Vendor Financial Services, Inc.
Jennifer Witherell Crastz, Esq.
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436-2829
Email: jcrastz@hrhlaw.com

Attorney for Comerica Bank
Cheryl Lott
Email: clott@buchalter.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

## PROOF OF SERVICE

*Miller v. Girardi*

**C.D. Case No. 2:25-cv-01038-AH**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is: 5743 Corsa Avenue, Suite 110, Westlake Village, California 91362.

On April 16, 2026  I served true copies of the following document(s) described as:

**STATUS REPORT RE PLAINTIFF, ELISSA D. MILLER, CHAPTER 7 TRUSTEE, ESTATE OF GIRARDI KEESE PROPOSED SALE OF THE LITIGATION CLAIMS IN THIS CASE TO THIRD PARTY.** on

EVAN C. BORGES,

GREENBERG GROSS LLP

650 Town Center Drive, Suite 1700

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**Additional Service**

AH Chambers <AH_Chambers@cacd.uscourts.gov>

Hon. Anne Hwang Courtroom 9C, 9th Floor

U.S. District Court

350 W. 1st Street

Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and a member of the bar of this Court.

Executed the 16th day of April, 2026

Larry W. Gabriel

Case No. 2:25-cv-01038-AH